

FILED

January 15, 2015

IN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 3:20 PM

## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

**EMPLOYEE:** Jason Thompsen          **DOCKET #:** 2014-04-0012
                                       **STATE FILE #:** 2014179717

**EMPLOYER:** Concrete Solutions      **DATE OF INJURY:** July 10, 2014

**INSURANCE CARRIER:** Argos Insurance

### INTERLOCUTORY ORDER BASED ON REQUEST FOR EXPEDITED HEARING

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by Jason Thompsen. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court hereby finds as follows:

On December 3, 2014, Mr. Thompsen filed a Request for Expedited Hearing with the Tennessee Court of Workers' Compensation Claims, Division of Workers' Compensation, pursuant to Tennessee Code Annotated section 50-6-239 to determine if the provision of temporary disability and/or medical benefits is appropriate. Attorney Greg Groth represents Mr. Thompsen. Attorney Nick Akins represents Concrete Solutions. Upon review of Mr. Thompsen's request, both parties' sworn deposition testimony and stipulated medical evidence, and pursuant to Tennessee Code Annotated section 50-6-239(d)(1) and (2), *infra,* and Mediation and Hearing Procedures Rule 0800-02-21-.14(1)(c), the undersigned determines that no additional information is needed to determine whether the Mr. Thompsen is likely to prevail at a hearing on the merits of the claim. The following order grants Mr. Thompsen's request for medical benefits and denies Mr. Thompsen's request for temporary disability benefits for the reasons set forth below.

### ANALYSIS

#### Issues

1.      Whether Mr. Thompsen is an employee or an independent contractor.

2.      Whether Concrete Solutions is obligated to provide additional medical benefits.

3.      Whether Mr. Thompsen is entitled to any past or future temporary total disability (TTD) benefits.

1

## Evidence Submitted

The parties exchanged medical records and stipulated to their admissibility in future hearings (See Dispute Certification Notice). The medical records are admitted into evidence as Exhibit 1, Medical Records of Jason Thompsen. The Request for Expedited Hearing identified two witnesses to testify by deposition, Eric Turney and Jason Thompsen. On January 2, 2015, Mr. Thompsen's counsel filed their depositions with the Court. The Court accepts into evidence the Deposition of Eric Turney, taken December 17, 2014, as Exhibit 2 and the Deposition of Jason Thompson, taken December 17, 2014, as Exhibit 3.

Concrete Solutions filed a position statement on January 2, 2015, in response to Mr. Thompsen's Request for Expedited Hearing. The Court considered it as argument only and not as evidence. Notably, in that position statement, Concrete Solutions did not object to the witnesses' testimony via deposition rather than live testimony. In fact, Concrete Solutions' counsel had already produced Mr. Turney as a witness on behalf of Concrete Solutions, and questioned Mr. Thompsen during the December 17, 2014, depositions. Since the setting of the hearing, neither party indicated an intention to offer testimony from any other witnesses or requested to supplement the medical records. In accordance with Rules of the Tennessee Department of Labor and Workforce Development, 0800-02-21-.14(c), based upon a review of the file, the Court finds a hearing is unnecessary as no additional information is needed to determine whether Mr. Thompsen is likely to prevail at a hearing on the merits of the claim.

The technical record consists of the following:

- Petition for Benefit Determination, filed October 28, 2014;
- Dispute Certification Notice, filed November 24, 2014; and,
- Request for Expedited Hearing, filed December 3, 2014.

The Court considered any factual statements contained within the pleadings and attachments to them as allegations unless established by the evidence.[1]

## History of Claim

Mr. Thompsen is a forty-nine (49) year-old resident of Putnam County, Tennessee. At some point in early or mid-May 2014, Concrete Solutions' principal, Eric Turney, telephoned Mr.

---

[1] The Court of Workers' Compensation Claims "Practice and Procedures," published at the Court's website, state at Rule 5.01 that, "Pursuant to Rule 0800-02-21-.14(1)(a), all motions for expedited hearing must be accompanied by affidavits." In addition, Rule 5.03 states, in relevant part: "If the moving party intends to rely upon affidavits, the moving party must file the affidavits at the time the request for expedited hearing is filed with the clerk." Further, the Rule 5.03 additionally states, "[T]he opposing party shall file a response to the request for expedited hearing attaching affidavits." Both parties submitted affidavits to the Division mediator, who subsequently certified the dispute for hearing. However, neither party submitted affidavits to accompany, or in response to, the Request for Expedited Hearing. It is noted that the rules use mandatory and not permissive language. The Court declines to admit the affidavits into evidence due to counsel's noncompliance with the rules. Neither party suffers undue prejudice from this ruling. Both parties' depositions, which are admitted into evidence, provide substantially the same information, but in much greater detail.

Thompsen to discuss the possibility of Mr. Thompsen working for him (Ex. 2, p. 32, ll. 1-5). On Monday, May 26, 2014, the parties met face-to-face (Ex. 3, p. 10, ll. 2-3). They entered into a verbal agreement where Mr. Thompsen would oversee a residential construction project for Concrete Solutions on Lee Seminary Road in Cookeville (Ex. 3, p. 12, ll. 10-12). Concrete Solutions needed an individual with expertise in vertical concrete construction because the supervisor preceding Mr. Thompsen did not possess that skill set (Ex. 2, p. 32-33, ll. 20-25, ll. 1-5). Mr. Thompsen has more knowledge of vertical construction than Mr. Turney and as a result Mr. Turney hired him (Ex. 3, p. 13, ll. 5-11).

Mr. Turney agreed that Mr. Thompsen would work full-time for him (Ex. 2, p. 41, ll. 5-7), and Concrete Solutions would pay Mr. Thompsen fifteen dollars ($15.00) per hour (Ex. 2, p. 33, ll. 17-19). Mr. Turney did not promise Mr. Thompsen work beyond the project at Lee Seminary Road (Ex. 2, p. 42, ll. 12-20). Concrete Solutions would not withhold taxes from Mr. Thompsen's pay and would give him a 1099 at the end of the year (Ex. 2, p. 34, ll. 4-9). At the time, it was simpler for Concrete Solutions to characterize all of its workers as independent contractors (Ex. 2, p. 35, 12-16). Mr. Thompsen testified in contrast that Mr. Turney said within two or three weeks, he would offer payroll employment, and that Mr. Thompsen told him he did not want to work receiving a 1099 (Ex. 3, p. 10-11, ll. 19-25, 1-12). Mr. Turney did not recall[2] Mr. Thompsen stating he did not wish to receive a 1099 (Ex. 2, p. 44, l. 7). Mr. Thompsen started work for Concrete Solutions under the belief that payroll deductions would come later (Ex. 3, p. 11, ll. 20-21).

Mr. Thompsen began working on the project on May 27, 2014 (Ex. 3, p. 12, ll. 7-9). At some point close to that date, Mr. Turney conducted a meeting of all workers to introduce Mr. Thompsen as the new supervisor (Ex. 2, p. 48, ll. 14-18). During Mr. Turney's deposition, he confirmed advising other employees of Mr. Thompsen's supervisory role and told them that they should take problems up with Mr. Thompsen, and if they remained dissatisfied, they should see Mr. Turney (Ex. 2, p. 48-49, ll. 21-25, 1-3). Mr. Thompsen testified that Mr. Turney told him he could fire the previous supervisor, "Rodney," if necessary (Ex. 3, p. 36, ll. 6-7). Mr. Turney testified that Rodney, he and Mr. Thompsen subsequently "tried to hash a few things out in the new pecking order," (Ex. 2, p. 48, ll. 9-11) but that Mr. Turney ultimately fired Rodney (Ex. 2, p. 48, l. 2). With regard to other workers, Mr. Turney acknowledged he gave Mr. Thompsen the authority to hire (Ex. 2, p. 46, ll. 2-6), and Mr. Thompsen subsequently hired two workers, whom Concrete Solutions paid (Ex. 2, p. 45, ll. 17-22). Mr. Thompsen confirmed his supervisory position and authority to fire workers (Ex. 3, p. 15, ll. 3-5).

Mr. Thompsen estimated that during the project, he telephoned Mr. Turney weekly to discuss particular issues (Ex. 3, p. 13, ll. 15-24). Mr. Turney was not regularly onsite to oversee the project; rather, Mr. Turney testified that he was "doing other projects, bidding" (Ex. 2, p. 51, l. 3).

The parties dispute the extent to which Mr. Thompsen used Concrete Solutions' tools. Mr. Thompsen testified he brought personal tools to the job (Ex. 3, p. 30, ll. 13-15). Mr. Turney admitted that Concrete Solutions provided the forms (Ex. 2, p. 56, ll. 15-17); a "Vibra Strike" or

---

2 The Court notes that, upon several occasions during Mr. Turney's deposition, he was unable to recall critical information.

3

concrete vibrator (Ex. 2, p. 58, ll. 1-5); a Bobcat; and concrete rakes and shovels (Ex. 2, p. 59, ll. 9-10). Concrete Solutions also provided a secure "job box" for storage of tools owned by the company or the workers (Ex. 2, p. 60-61, ll. 21-25, l. 1). Mr. Thompsen testified that he used Concrete Solutions' concrete vibrator and power tools, including a drill, cord and hammer drill (Ex. 3, p. 31, ll. 3-11). Mr. Turney admitted it is "just part of being a construction worker" to bring a few personal tools to a job, such as a tool belt, hammer, etc. (Ex. 2, p. 62, ll., 19-23).

With regard to who set Mr. Thompsen's work hours, Mr. Thompsen testified he did not have the parameters to set his own hours, and initially Concrete Solutions set his hours at 7:00 a.m. to 3:30 p.m. but later Concrete Solutions switched the hours to 6:00 a.m. to 2:30 p.m. to avoid the summer heat (Ex. 3, p. 31-32, l. 25, ll. 1-9). Mr. Turney insisted that workers are free to work for others (Ex. 2, p. 76, ll. 5-7). Mr. Thompsen testified there would have been no time in his workday for other jobs/assignments, but that if time were not a factor, he was free to take another job (Ex. 3, p. 32, ll. 16-24).

On July 10, 2014, Mr. Thompsen fell several feet while assembling decking, injuring his left leg (Ex. 3, p. 16, ll. 1-14). Mr. Turney was not present (Ex. 2, p. 80-81, l. 25, l. 1). Mr. Thompsen immediately telephoned Mr. Turney to report the injury and told him he was going to Satellite Med-Cookeville (Ex. 3, p. 16-17, ll. 18-21, ll. 10-17). The parties do not dispute that this injury occurred on the jobsite.

On July 11, 2014, Dr. Gregory Roberts diagnosed a "left lateral malleolus fracture with incomplete deltoid," and recommended surgery. Dr. Roberts performed an open reduction internal fixation on July 14, 2014. Mr. Thompsen saw Dr. Roberts for follow-up care. On September 24, 2014, Dr. Roberts concluded, "Fracture appears to be anatomically reduced and healing." He additionally noted, "I am concerned he could have a deep infection," and, "I have told him that I think he is going to need his hardware removed at some point."

Concrete Solutions gave Mr. Thompsen a check on July 13, 2014, in the amount of three thousand, eight hundred and fifty dollars ($3,850.00) to pay for the July 14, 2014, surgery (Ex. 3, p. 20, ll. 10-18). Mr. Thompsen testified he thought Concrete Solutions did not have workers' compensation insurance, although Mr. Turney never told him that directly (Ex. 3, p. 20-21, ll. 19-25, l. 1). Mr. Thompsen used the funds to pay for his surgery (Ex. 3, p. 21, ll. 2-4). Mr. Turney acknowledged that Concrete Solutions had workers' compensation insurance at that time (Ex. 2, p. 86, ll. 11-13). Mr. Turney testified that he offered to pay for the surgery because Mr. Thompsen told him he did not have health insurance and the cash price was considerably lower than if Mr. Thompsen financed the operation (Ex. , p. 84-85, ll. 10-25, 1-13). Mr. Turney did not file the claim with his workers' compensation carrier because he believed there was no duty to file a claim for an independent contractor (Ex. 2, p. 87, ll. 2-6).

In late August or early September, 2014, Mr. Thompsen contacted Concrete Solutions to inquire if he could return to work (Ex. 2, p. 87, ll. 12-19). Mr. Turney testified he did not need Mr. Thompsen's help but agreed he could return out of kindness (Ex. 2, p. 87, ll. 12-19). Mr. Thompsen returned to work for Concrete Solutions on September 8, 2014 (Ex. 2, pp. 88-89, ll. 24-24, 1-2). On that same day, Concrete Solutions began offering workers the option of classification as employees

(Ex. 2, p. 37, l. 11-25; Ex. 2, p. 88, ll. 1-5). Mr. Turney testified he made the opportunity to be employees available upon his wife's urging (Ex. 2, p. 38, ll. 22-25, Ex. 2, p. 39, ll. 1-24). Mr. Turney stated that three workers declined (Ex. 2, p. 89, ll. 13-24). He further testified that that after giving workers that option, he began giving preference for work to employees (Ex. 2, p. 113-114, ll. 19-25, 1-6). Other than that, he has changed nothing in the way employees are treated as compared to independent contractors (Ex. 2, p. 114, l. 7-9).

On or about September 29, 2014, Concrete Solutions laid Mr. Thompsen off (Ex. 3, p. 25, ll. 20-22; Ex. 2, p. 112, ll. 18-19). Mr. Thompsen testified that he asked Mr. Turney to pay for follow-up treatment with Dr. Roberts at that time, and Mr. Turney refused (Ex. 3, p. 26, l.1-5). He has not worked since that date because Dr. Roberts has restricted him from doing so (Ex. 3, p. 44-45, ll. 21-25, 1-3).

### Parties' Contentions

Mr. Thompsen contends he was an employee and is therefore eligible for benefits under the Tennessee Workers' Compensation Act, to include medical and temporary disability benefits. Concrete Solutions contends that Mr. Thompsen is an independent contractor and, therefore, Mr. Thompsen's claim should be denied on the grounds of compensability. Concrete Solutions argues that it paid for Mr. Thompsen's surgery solely out of kindness.

### Findings of Fact and Conclusions of Law

*Standard Applied*

When determining whether to award benefits, the Judge must decide whether the moving party is likely to succeed on the merits at trial given the information available. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W.3d 209, 214 (Tenn. 2003). In a workers' compensation action, pursuant to Tennessee Code Annotated section 50-6-239(c)(6) (2014), the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence. The employee must show the injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13) (2014).

Expedited hearings are governed by Tennessee Code Annotated section 50-6-239(d), which provides the following in pertinent part:

> (1) Upon motion of either party made at any time after a dispute certification notice has been issued by a workers' compensation mediator, a workers' compensation judge may, *at the judge's discretion,* hear disputes over issues provided in the dispute certification notice concerning the provision of temporary disability or medical benefits on an expedited basis and enter an interlocutory order upon determining that the injured employee would likely prevail at a hearing on the merits. ...
> *(2)    A workers' compensation judge is not required to hold a full evidentiary hearing before issuing an interlocutory order for*

*temporary disability or medical benefits.*

Tenn. Code Ann. § 50-6-239(d)(1),(2) (2014). (Emphasis added.) In addition, the "Mediation and Hearing Procedures" governing practice in the Court of Workers' Compensation Claims provides the following:

> Upon receipt of the file, *the judge shall have discretion* to either set the matter for a hearing or enter an interlocutory order based on a review of the file upon determining that no additional information is needed to determine whether the employee is likely to prevail at a hearing on the merits of the claim.

Tenn. Comp. R. & Regs., 0800-02-21-.14(1)(c) (2014). (Emphasis added.)

*Factual Findings*

Concrete Solutions offered Mr. Thompsen employment as a supervisor at a residential construction project at the rate of fifteen dollars ($15.00) per hour. On July 10, 2014, Mr. Thompsen suffered an injury to his left ankle when he fell at the jobsite. Immediately following the jobsite incident, Mr. Thompsen provided actual notice of the injury to Concrete Solutions. As a result of the jobsite incident, Mr. Thompsen suffered a left ankle fracture, requiring surgical repair, and follow-up care. Concrete Solutions paid for the surgery. Mr. Thompsen did not return to work until September 8, 2014. Mr. Thompsen worked as an employee until September 29, 2014, when Concrete Solutions laid him off. Mr. Thompsen has not worked since that date. Mr. Thompsen told Concrete Solutions that he needs additional medical care, which Concrete Solutions has refused to cover. Concrete Solutions has neither filed a Notice of Denial, nor has it paid temporary disability benefits or medical benefits, other than the three thousand, eight hundred and fifty dollars ($3,850.00) it gave Mr. Thompsen to pay for the surgery. The medical records do not indicate restrictions on Mr. Thompsen's work activity.

*Application of Law to Facts*

*1.    Mr. Thompsen is an employee rather than an independent contractor.*

Tennessee Workers' Compensation law defines "employee" as "every person, including a minor, whether lawfully or unlawfully employed…under any contract of hire or apprenticeship, written or implied." Tenn. Code Ann. § 50-6-102(11)(A) (2014) To recover workers' compensation benefits, the claimant must be an employee and not an independent contractor or a casual employee. *Bargery v. Obion Grain Co.*, 785 S.W.2d 118, 121 (Tenn. 1990). Determining whether an individual is characterized as an employee or an independent contractor for workers' compensation purposes requires a specialized factual analysis. *Masiers v. Arrow Transfer & Storage Co.*, 639 S.W.2d 654, 656-57 (Tenn. 1982) (*citing Barnes v. Nat'l Mortg. Co.*, 581 S.W.2d 957 (Tenn. 1979)). No single aspect of a work relationship is conclusive in making this determination, and in deciding whether a worker is an employee or independent contractor, "the trier of fact must examine all relevant factors and circumstances" of the relationship. *Boruff v. CNA Ins. Co.*, 795 S.W.2d 125, 127 (Tenn. 1990).

6

The Tennessee Workers' Compensation Act requires that "[i]n a work relationship, in order to determine whether an individual is an 'employee,' or whether an individual is a 'subcontractor' or an 'independent contractor,' the following factors shall be considered:

(i) The right to control the conduct of the work;
(ii) The right of termination;
(iii) The method of payment;
(iv) The freedom to select and hire helpers;
(v) The furnishing of tools and equipment;
(vi) Self-scheduling of working hours; and
(vii) The freedom to offer services to other entities."

Tenn. Code Ann. § 50-6-102(11)(D) (2014).

These factors are not absolutes that preclude examination of each work relationship as a whole and are no more than a means of analysis. *Masiers*, 639 S.W.2d at 656 (*citing Jackson Sawmill v. West*, 619 S.W.2d 105 (Tenn. 1981)). While no single factor is determinative, the Tennessee Supreme Court "has repeatedly emphasized the importance of the right to control, the relevant inquiry being whether the right existed, not whether it was exercised." *Galloway v. Memphis Drum Service*, 822 S.W.2d 584, 586 (Tenn. 1991). Once it is established that an employment relationship exists, "the burden is on the employer to prove the worker was an independent contractor rather than an employee."

Neither party disputes that the parties reached a verbal agreement on May 26, 2014, regarding Mr. Thompsen working at the project on Lee Seminary Road. Thus, the issue is whether Mr. Thompsen is properly classified as an employee or independent contractor, with the burden shifting to Concrete Solutions to prove he is the latter.

With regard to the right to control, it is undisputed that Concrete Solutions hired Mr. Thompsen to supervise the crew at the Lee Seminary Road project largely based upon his experience with vertical concrete construction. Concrete Solutions gave Mr. Thompsen wide latitude in some respects: Concrete Solutions authorized Mr. Thompsen to hire and fire those whom he supervised, and Concrete Solutions only provided weekly telephonic instruction, as opposed to more regular onsite guidance and oversight. Mr. Thompsen's right to control the conduct of the work had limits, however, in that Concrete Solutions set the work hours, and if the jobsite crew experienced a problem with Mr. Thompsen, they could go directly to Mr. Turney. That is exactly what occurred when Mr. Thompsen attempted to terminate "Rodney," who then talked to Mr. Turney to see if that was the case. Further, it is quite possible to vest a worker with significant supervisory authority and/or autonomy, while maintaining the ultimate control of that worker and the workplace generally, within the context of an employer-employee relationship. The Court concludes that such occurred in the case at bar. In the present case, the "right to control the conduct of the work" factor supports an employer-employee relationship.

With regard to the method of payment, it is undisputed that prior to September 8, 2014, Concrete Solutions did not deduct social security or income tax from Mr. Thompsen's pay. While this

7

factor may be indicative of an independent contractor arrangement, it is not controlling. *See Carver v. Sparta Elec. Sys.*, 690 S.W.2d 218 (Tenn. 1985). Mr. Turney testified that this method was simpler for Concrete Solutions. While that may be true, it does not necessarily follow that Mr. Thompsen was an independent contractor at that time. Although Concrete Solutions opted to pay Mr. Thompsen in accordance with a method typical for independent contractors, it otherwise treated him as an employee. Moreover, Concrete Solutions paid Mr. Thompsen at all times at an hourly rate rather than by the project and Mr. Thompsen received no portion of the profit. The "method of payment" factor also supports an employer-employee relationship.

As for the freedom to select and hire helpers, it is undisputed that Mr. Thompsen had such authority, but that authority derived from Employer. Concrete Solutions paid the workers hired by Mr. Thompsen. The "freedom to select and hire helpers" factor supports an employer-employee relationship.

While the furnishing of tools and equipment by an employee is a factor to be considered, it "is insufficient, without more, to establish the relationship of an independent contractor." *See Carver*, 690 S.W.2d at 221. In this case, it is undisputed that Mr. Thompsen brought his own tools to the worksite, but Mr. Turney acknowledged that it is commonplace to do so within the construction industry. Concrete Solutions provided the essential tools and equipment particular to concrete work to complete the project, including but not limited to, the forms and a concrete vibrator. The "furnishing of tools and equipment" factor supports an employer-employee relationship.

As for the self-scheduling of working hours, Mr. Thompsen testified that Concrete Solutions set the schedule and then re-set it to accommodate weather conditions. Concrete Solutions did not offer contrary testimony. The "self-scheduling of working hours" factor supports an employer-employee relationship.

The final applicable factor to the case is the freedom to offer services to other entities. It is undisputed that Concrete Solutions never explicitly prohibited Mr. Thompsen from seeking additional work opportunities. However, Mr. Turney testified that his offer to Mr. Thompsen was for full-time work. Mr. Thompsen's work responsibilities with Concrete Solutions did not leave sufficient time to pursue additional work. The Court concludes that as a practical matter, Mr. Thompsen was unable to offer his services to other entities, so that the "freedom to offer services to other entities" factor supports an employer-employee relationship.

Virtually every statutory factor supports an employer-employee relationship. Accordingly, this Court concludes that Concrete Solutions failed to prove that Mr. Thompsen is an independent contractor.

2.    *Mr. Thompsen is entitled to medical benefits.*

Tennessee law requires an employer to provide "…free of charge to the employee such medical and surgical treatment … made reasonably necessary by accident as defined in this chapter[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014). The statute further requires the employee to accept medical benefits furnished by the employer, provided, that:

8

> [I]in any case when the employee has suffered an injury and expressed a need for medical care, the employer shall designate a group of three (3) or more reputable physicians, surgeons, chiropractors or specialty practice groups if available in that community... from which the injured employee shall select one (1) to be the treating physician.

Tenn. Code Ann. § 50-6-204(3)(A) (2014). The Tennessee Supreme Court has held that, "where the employer fails to give the employee the opportunity to choose the ultimate treating physician from a panel of at least three physicians, he runs the risk of having to pay the reasonable cost for treatment of the employee's injuries by a physician of the employee's choice." *United States Fidelity & Guaranty Co. v. Morgan*, 795 S.W.2d 653, 655 (Tenn. 1990). The decision turns on the issue of whether, under the circumstances, the employee was justified in obtaining further medical services, without first consulting the employer or its insurer. *Id.*, citing *Burlington Industries, Inc. v. Clark*, 571 S.W.2d 816 (1978).

In this case, it is undisputed that Mr. Thompsen suffered an injury to his left ankle at work for Concrete Solutions. Mr. Thompsen is entitled to medical care to treat the injury. Employer has failed to provide a panel as the statute requires. While Mr. Turney paid for Mr. Thompsen's surgery, when Employee told him in late September 2014 that he needed more treatment with Dr. Roberts, Employer declined to pay for it. Under the circumstances, Mr. Thompsen's decision to continue treating with Dr. Roberts was reasonable. Mr. Thompsen testified that additional treatment remains necessary. The medical records confirm that Dr. Roberts thinks that Mr. Thompsen might have an infection and will likely require surgery to remove hardware. Employer/carrier shall pay for Dr. Roberts' continued treatment of Employee's work-related ankle injury as the authorized treating physician.

In addition, while it is undisputed that Concrete Solutions has already paid for Mr. Thompsen's surgery, it is unclear whether Mr. Thompsen has incurred other out-of-pocket, reasonably necessary medical expenses relative to treatment for his ankle injury. The Court cannot speculate as to the reasonableness and necessity or the amount of any additional medical expenses that may have already been incurred. At this time, the Court refrains from ordering payment of same. The parties are encouraged to resolve this question without further litigation.

3.      *Mr. Thompsen is not entitled to temporary total disability benefits.*

Temporary total disability (TTD) benefits, authorized by Tennessee Code Annotated section 50-6-207(1), ensure that employees receive compensation during the time they are totally prevented from working, while recuperating as far as the nature of their injury permits. *Gluck Bros., Inc. v. Coffey*, 431 S.W.2d 756, 759 (Tenn. 1968). In other words, "the temporary total disability period is the healing period during which the employee is totally prevented from working." *Id.* In order to establish a *prima facie* case for temporary total disability benefits, the worker must show that (1) he/she was totally disabled and unable to work due to a compensable injury, (2) the work injury and inability to work are causally connected, and (3) the duration of the disability. *Gray v. Cullom*

9

*Machine, Tool & Die, Inc.*, 152 S.W.3d 439, 443 (Tenn. 2004).

In this case, after thorough and careful review of the medical records, the Court finds no indication that Dr. Roberts restricted Mr. Thompsen from working for any period of time. Mr. Thompsen testified he has not worked since the layoff and that Dr. Roberts has not released him to return to work. It is certainly plausible that one suffering from the type of injury Mr. Thompsen sustained would be unable to work before and immediately after the surgery. However, this Court cannot rely entirely upon Mr. Thompsen's lay opinion or his hearsay reporting of Dr. Roberts' expert opinion regarding his condition as a basis for ordering TTD benefits. The determination is further complicated by the fact that Mr. Thompsen returned to work for Concrete Solutions for three weeks in September. It appears that Mr. Thompsen's hardware may require removal and he has not reached maximum medical improvement. At this time, Mr. Thompsen has not met his burden and accordingly the Court cannot order past or ongoing TTD benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1.     Concrete Solutions or its workers' compensation carrier shall provide Mr. Thompsen with additional medical treatment with Dr. Gregory Roberts as the authorized treating physician for the left-ankle injury as required by Tennessee Code Annotated section 50-6-204. Medical bills shall be furnished to Concrete Solutions or its workers' compensation carrier by Mr. Thompsen or medical providers.

2.     Mr. Thompsen's claim against Concrete Solutions or its workers' compensation carrier for the requested temporary disability benefits is denied on grounds other than compensability at this time.

3.     This matter is set for Initial Hearing on **March 17, 2015** at 10:00 a.m., Central Standard Time.

4.     Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured employer must submit confirmation of compliance with this Order to the Division by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

5.     For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED** this the 15th day of January, 2015.

Chief Judge Kenneth M. Switzer
Tennessee Court of Workers'
Compensation Claims

Initial Hearing:

An Initial Hearing has been set with Chief Judge Kenneth M. Switzer, Court of Workers Compensation. You must dial in at 615-532-9552 or 866-943-0025 toll free at to participate in your scheduled conference.

Please Note: You must call in at the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal".

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 15th day of January, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| Greg Groth, Mr. Thompsen's attorney | | | | | X | greg@greggrothlaw.com |
| Nicholas Akins, Concrete Solutions' attorney | | | | | X | nakins@morganakins.com |

Penny Shrum
Clerk, Workers' Compensation Judge