**JACKSON SAWMILL, INC., Appellee,**

v.

**William Earl WEST, Appellant.**

Supreme Court of Tennessee,
at Jackson.

July 13, 1981.

Michael R. Lipscomb, Henderson, for appellant.

Thomas H. Rainey, Menzies, Rainey & Kizer, Jackson, for appellee.

## OPINION

FONES, Justice.

This is a workers' compensation case in which the sole issue is whether defendant, Mr. West, was an independent contractor or an employee of plaintiff at the time of his injury. Plaintiff, Jackson Sawmill, Inc., instigated the present suit to resolve this issue and the trial court held that West was indeed an independent contractor and not an employee. For the reasons set forth below, we affirm the decision of the trial judge.

## I.

Plaintiff, Jackson Sawmill, is a Tennessee corporation with its principal place of business in Jackson, Tennessee. According to the testimony of the president, Mr. Hanafee, it would purchase tracts of timber from individual property owners in the surrounding counties. The Company would then hire loggers to cut, load, and haul the timber to the sawmill for processing. The property owner would typically indicate to the Company the size and length of timber to cut. The contract with the landowner on whose property defendant was injured, for example, required that the trees be cut "fourteen inches from the ground, fourteen inches to the stump." At the time defendant was injured, Hanafee testified his company contracted with about three or four different loggers for the purpose of cutting and hauling the timber to the sawmill.

Defendant, Mr. West, began working for plaintiff in September of 1976. A written contract entered into between the parties that year stated as follows:

I herewith enter into this contract with Jackson Sawmill Company Inc., Jackson, Tennessee to cut, snake, load and haul logs to their mill in Jackson, Tennessee for __$67.00__ per M. Timber to the designated by Jackson Sawmill Company, Inc.

I will furnish all necessary tools, labor and equipment to complete this job. The work to be performed in an efficient manner for the best results obtained.

s/ ____Earl West____

During the entire relationship between the parties, Mr. West did in fact own and provide all the necessary equipment to cut and haul the timber to the sawmill. This equipment included "two trucks, a knuckle boom loader and a skidder," as well as the necessary saws, wedges, and sledgehammers. If any of defendant's equipment broke down for an extensive period of time,

he was allowed to use the Company's equipment, but if the company had to provide its own truck and driver, defendant was not paid the same rate as he was when he was using his own equipment. For short break downs lasting less than a day or so, replacement equipment was not needed.

Defendant was paid according to the board feet of logs he cut and hauled for plaintiff. Jackson Sawmill Company did not withhold any social security or income taxes from defendant's paycheck.

Defendant also hired his own employees, whom he paid according to the thousand board feed cut and hauled. He withheld no social security or income taxes from their pay checks. As to the members of his crew, defendant maintained complete control as far as deciding who to hire and fire and as far as directing how they were to perform their jobs. Jackson Sawmill had no control over them.

From July to December, 1977, plaintiff did deduct from defendant's pay checks the cost of premiums for workers' compensation insurance. It is unclear whether this policy covered defendant or just his employees. Defendant and his wife were not satisfied with the amounts being deducted for this expense and therefore decided to purchase their own insurance to get a better rate. Defendant was issued, on January 4, 1978, a certificate of insurance indicating he had acquired workers' compensation coverage. It appears undisputed that this policy only covered defendant's employees and did not cover defendant.

During his relationship with the Company, defendant was not required to work a specific number of hours per week, and was not told when to start his job in the morning or when to end in the afternoon. If the job site was some distance from his home, it was up to defendant to decide whether to commute or rent a motel room near the place he was working. If he did stay in a motel, he paid for that expense.

Representatives of the Company would show defendant the nature and type of work to be done on each job. He was directed to the boundaries of the land on which to cut and either shown trees that were marked to be cut or told what size trees to cut. He was further instructed on what length to cut the logs and was specifically told not to split the trees or pull the stumps. Defendant was also directed to the logging roads to be used and was told not to use them when they were too wet in order to prevent their deterioration. Defendant, however, could work on days when it rained if he so chose. On these days he could cut, snake, and bunch the trees to be hauled at a later date.

During the time that defendant worked for plaintiff he also worked for at least three other companies, either cutting, snaking, or hauling logs. Defendant testified that he had to ask permission to do so and could only work for others when plaintiff was not operating. Hanafee testified, however, that defendant was free to work for anybody he wanted. Once the parties entered into an agreement for defendant to cut timber on a specific job, however, he would consider it a breach of contract for defendant to leave prior to completing that job.

While working in this relationship with plaintiff, defendant was injured on July 22, 1978, when a large tree fell across him.

## II.

In analyzing whether an individual is an employee or an independent contractor, this Court has set forth a number of tests to be applied:

"Among these tests are (1) the right to control the conduct of the work, (2) the right of termination, (3) the method of payment between the alleged employer and employee, (4) whether or not the alleged employee furnishes his own helpers, and (5) whether or not the alleged employee furnishes his own tools.

These tests are no more than a means of analysis. They are not to be applied abstractly, nor are they absolutes which preclude examination of each work relationship as a whole. Utilization of these tests depends upon the salient facts of a

particular relationship. No one test is infallible or entirely indicative of the legal characterization to be given to a particular relationship. The decisional value of any single test is commensurate with the degree of its applicability to the particular case." *Cromwell General Contractors, Inc. v. Lytle*, 222 Tenn. 633, 639–40, 439 S.W.2d 598, 601 (1969).

Although no one test is "infallible or entirely indicative," it is equally well settled that "[t]he primary test for determining claimant's status as employee or independent contractor is the 'right to control.'" *Lindsey v. Smith and Johnson, Inc.*, 601 S.W.2d 923, 925 (Tenn.1980). Other well established considerations of workers' compensation law are not abandoned, however:

"We overlay these rules with a consideration which is always before us in workers' compensation cases—that these laws should be rationally but liberally construed to promote and adhere to the Act's purposes of securing benefits to those workers who fall within its coverage." *Id.*

As to the specific test of "right to control" this Court has noted that:

"'[T]he mere fact that the principal contractor reserves a right to supervise or inspect the work during its performance, does not make the subcontractor an employee or mere servant, where there is no right of control of the method of performance, except to see that the end result conforms to the plans and specifications.'" *Barnes v. National Mortg. Co.*, 581 S.W.2d 957, 959 (Tenn.1979); *Quoting Smart v. Embry*, 208 Tenn. 686, 690–91, 348 S.W.2d 322, 324–25 (1961).

Applying these well settled principles of law to the present case, the inescapable conclusion is that the trial court was correct in ruling that defendant was an independent contractor and not an employee.

First, it is obvious that defendant supplied all the necessary tools and equipment to perform his job. The fact that defendant was allowed to use plaintiff's equipment on those occasions when his broke down does not alter the relationship between the parties. Use of plaintiff's equipment was the exception, not the rule, and such an arrangement is not inconsistent with an independent contractor.

Second, defendant supplied his own workers, over whom he exercised complete control as to hiring, firing, and directing the manner in which they performed their work. In addition, he purchased his own workers' compensation coverage for their protection. Such actions are inconsistent with that of an employer-employee relationship between plaintiff and defendant.

Third, plaintiff deducted no social security or income taxes from defendant's pay checks. Although this factor in and of itself is not of *controlling* significance, *see Wooten Transports, Inc. v. Hunter*, 535 S.W.2d 858, 860 (Tenn.1976), it does weigh against defendant in this case.

Fourth, the right to termination between the parties is controverted and the trial court made no specific findings as to which factors or tests he used to conclude that defendant was an independent contractor. We assume, in the absence of specific findings, that the trial court found that *all* the enumerated tests weighed against defendant, including the right to termination. With this assumption in mind, Mr. Hanafee's testimony that he did not feel he could dismiss defendant once a particular job contract had been entered into would certainly be material evidence to support the trial judge's findings on this particular issue.

Finally, as to the issue of "right to control," we do not find anything in the record indicating that plaintiff either exercised or had the power to control defendant's activities to the extent that would normally exist between an employer and an employee. We note that defendant was free to arrive at work and leave at the end of the day at any time he chose. So long as the overall job was completed on time, the amount of time defendant worked was left up to him. On rainy days, he could choose whether or not to work.

At the beginning of each new job, defendant was instructed as to which trees to

cut, where to cut, and how long to cut each log. But these types of instructions appear to be necessary due to plaintiff's contractual arrangements with the property owners and due to the necessities of the logging business in general. One would expect these types of instructions to be given to either independent contractors or employees. These instructions are totally consistent with those necessary to see that the end result of the logging conformed to the different plans and specifications required by each job. *See Barnes v. National Mortg. Co., supra.* There is nothing in the record indicating that plaintiff had the power to demand defendant use particular methods to cut, snake, or haul each tree. In addition, it appears that defendant was not bound by an employer-employee arrangement to work for plaintiff exclusively; in fact, during their relationship it appears he did work for other logging companies and as long as defendant did not breach a contract to finish a particular job, plaintiff had no ties on him.

Defendant relies on the cases of *Finley v. Keisling*, 151 Tenn. 464, 270 S.W. 629 (1925) and *Frost v. Blue Ridge Timber Corp.*, 158 Tenn. 18, 11 S.W.2d 860 (1928), for authority that he should be held to be an employee and not an independent contractor. While we do find several similarities between these cases and the present one, we find them to be distinguishable in several important aspects.

In the *Finley* case, evidence was introduced indicating that the employer not only exercised control as to what trees to cut and what length to cut them, but also maintained *absolute* control on *all* aspects of the cutting, including *when* to cut. There was also evidence that the employer had the power to stop the men from cutting at any time. In the present case, there is no showing of such extensive control.

In the *Frost* decision, the court noted that there was nothing in the contractual arrangement between the parties indicating the employer did not retain the right to terminate the employment at any time or did not retain the right to direct the means and method of hauling logs. The court further pointed to the testimony of a superintendent, who stated that the employer would substitute more efficient mule teams for the ones supplied by the employees if their own teams could not get the lumber out on time. In the present case, we have already noted that there was evidence that plaintiff could not terminate the contracts with defendant at will. The written contract and the testimony of Mr. Hanafee indicate that the Company maintained only enough control over defendant to insure that the end result of the cutting, snaking, and hauling conformed to the job specifications of each project. Finally, plaintiff expected defendant to provide his own equipment, and never threatened to substitute his own machinery for defendant's. Only in rare cases when defendant's equipment broke down completely for extensive periods of time would defendant be allowed to use plaintiff's equipment.

Having looked at the record as a whole and analyzed each of the tests enumerated by this Court, we hold that the trial court was correct in concluding that defendant was, at the time of his injury, an independent contractor and not an employee. The decision of the trial court is affirmed. Costs of this appeal shall be assessed against defendant, Mr. West.

HARBISON, C. J., and COOPER, BROCK and DROWOTA, JJ., concur.