Jerry **BORUFF**, Appellee,

v.

**CNA INSURANCE COMPANY**, et al., Appellants.

Supreme Court of Tennessee, at Knoxville.

July 16, 1990.

John W. Cleveland, Howe & Cleveland, Sweetwater, for appellee.

Michael J. Mollenhour, Morton, Lewis, King & Krieg, Knoxville, for appellants.

### OPINION

COOPER, Justice.

Calaman, Inc. and its insurance carrier have appealed from a judgment awarding workers' compensation benefits to Jerry Boruff. Appellants insist that Boruff was never an employee of Calaman, Inc., that his relationship was that of an independent contractor. They also insist that the award of permanent partial disability benefits was excessive. On review of the record, we find that the evidence supports the findings of the trial court on both issues, and affirm the judgment.

Calaman, Inc. is in the business of leasing highway tractors to various freight carriers, and furnishing drivers for the tractors. It admits to having only two

employees, the vice president of operations and his secretary. One of the several responsibilities of the vice president of operations is to recruit drivers of the leased highway tractors. One such driver was Jerry Boruff, who contracted with Calaman on March 3, 1987, to operate a highway tractor leased to the Cheyenne Express, Inc. Mr. Boruff sustained a severe neck injury on December 14, 1987, while unloading cargo in Knoxville, Tennessee. The injury necessitated the excision of an intervertebral disc at C6 and a fusion of the C6 and C7 verterbrae. Calaman, Inc. declined to pay medical expenses or weekly workers' compensation benefits, first taking the position in pleadings filed in the trial court that Boruff was an employee of Cheyenne Express, and then that Boruff was an independent contractor.

■ The record shows that Calaman requires each driver it recruits to enter into a written contract. Both parties rely on the contract, and the actual mode of operation under the agreement, in arguing several of the indicia generally considered by a trier of fact in determining the existence or nonexistence of an independent contractor relationship. *See Masiers v. Arrow Transfer & Storage Company*, 639 S.W.2d 654 (Tenn.1982). Needless to say the parties arrive at different conclusions.

The contract required by Calaman defines Mr. Boruff as an independent contractor, and is designed to emphasize that relationship. However, a detailed analysis of the contract and the practical effect of its requirements indicate to us that, in fact, the relationship between Calaman and Boruff is that of employer-employee.

Under the contract, Boruff was to operate a Calaman highway tractor leased to Cheyenne Express. Calaman was to pay all costs of operation and maintenance of the equipment, and to pay Jerry Boruff eighteen cents for each mile driven "less Workmen's Comp." The workers' compensation premium to be deducted was to be calculated on Jerry Boruff's earnings. There is nothing in the contract to indicate directly who would be within the workers' compensation coverage paid from earnings of Mr. Boruff and other drivers recruited by Calaman. The contract does provide that the driver shall obtain worker's compensation insurance for himself and any helper used by him. James McFerrin, the operations vice president of Calaman who recruited Mr. Boruff, testified he assumed that Mr. Boruff was within the coverage paid from salary deductions. Mr. Boruff testified he was told he was within the coverage.

The term of the contract was stated to be one year and, on its face, could be terminated only for cause. We note, however, that the inability of Calaman to terminate the contract other than for cause was more apparent than real. The contract gave Calaman the right to take possession of its tractor from Mr. Boruff at any time for any reason without any concomitant requirement that Calaman give Boruff another tractor to drive or make payment to Boruff for down time. The practical effect of this was that Calaman could effectively terminate its relationship with Mr. Boruff at will without liability by merely demanding the return of its tractor.

We also note that the contract provides that Mr. Boruff "is free to contract for similar services to be performed for others while he is under contract with Calaman." The only services to be performed by Mr. Boruff was to drive a tractor owned by Calaman. It is difficult to see how he could drive for two firms at the same time, especially since he had no tractor of his own. Needless to say, Mr. Boruff never exercised this contractual right, nor was he ever in a position to do so.

Under Calaman's contract with Cheyenne Express, cargo pickup and delivery places, dates and times were to be decided by Cheyenne's dispatcher. However, Calaman retained the responsibility for selecting the routes to be driven. Calaman required Boruff, in making pickups and deliveries, to take the most commercially reasonable route and offset any equipment operating costs due to a deviation in route against Boruff's earnings. Calaman also penalized Boruff five cents a mile if he failed to meet pickup or delivery times. Calaman re-

quired Boruff, when on a trip, to report to it daily and to mail a completed settlement package within seventy-two hours of the delivery of the cargo on each trip. Calaman also required Boruff to report to it immediately any exception noted by a consignee on a pickup or delivery receipt and any accident that might occur. Failure on the part of Boruff to comply with any of Calaman's rules subjected him to a reduction in compensation of $25.00 for each violation. Boruff also testified, and it was not disputed by Calaman, that he could not take any time off from work without first clearing it with Calaman and then with the Cheyenne dispatcher.

This Court has pointed out repeatedly that there is no single element of a relationship that is determinative of the status of a particular worker, and has emphasized that the trier of fact must examine all relevant factors and circumstances of a particular relationship in deciding whether the status of the worker is that of independent contractor or employee. *See Masiers v. Arrow Transfer and Storage Co.,* 639 S.W.2d 654 (Tenn.1982); *Jackson Sawmill v. West,* 619 S.W.2d 105 (Tenn.1981); *Lindsey v. Smith and Johnson, Inc.,* 601 S.W.2d 923 (Tenn.1980); *Barnes v. National Mortgage Co.,* 581 S.W.2d 957 (Tenn. 1979). While no single factor is infallible or entirely indicative it has generally been recognized by this Court that "the primary test for determining claimant's status as employee or independent contractor is the 'right to control.'" *Lindsey v. Smith & Johnson, Inc.,* 601 S.W.2d 923 (Tenn.1980). Another factor that has gained controlling significance in the cases is the right of termination. *Wooten Transports, Inc. v. Hunter,* 535 S.W.2d 858 (Tenn.1976). As noted in *Masiers v. Arrow Transfer and Storage Company,* 639 S.W.2d 654, 656 (Tenn.1982), "the power of a party to a work contract to terminate the relationship at will is contrary to the full control of work activities usually enjoyed by an independent contractor."

In this case, specifically noting the degree of control over Boruff's activities retained by Calaman under the work agreement, and the effective retention by Cala-

man of the right to terminate its relationship with Boruff at will, the chancellor concluded that the relationship between Calaman and Boruff was that of employer-employee. In our opinion, the evidence supports his findings and conclusion.

■ It is undisputed in the record that Mr. Boruff sustained an injury to the neck in the course and scope of his employment. As the result of the injury and subsequent surgery, Boruff has a permanent partial anatomical disability of ten percent to the body as a whole. Two witnesses testified as to the vocational disability of Boruff. Dr. Kenneth Anchor evaluated the disability at sixty-five to seventy percent. Rodney Caldwell evaluated Boruff's vocational disability at fifteen percent. The chancellor concluded that plaintiff has a permanent partial disability of forty-five percent to the body as a whole as the result of the on-the-job injury of December 14, 1987.

■ Calaman insists the disability rating is excessive. Specifically, Calaman insists that the trial court erred in permitting Dr. Kenneth Anchor to testify as a vocational expert and that, in any event, the court gave too much emphasis to Dr. Anchor's testimony. Calaman emphasizes that Dr. Anchor is a clinical psychologist, who has had no on-the-hands experience in placing workers in jobs. This argument overlooks the fact that in addition to being a licensed clinical psychologist, Dr. Anchor is a Diplomate and Fellow of the American Board of Vocational Experts, and a Diplomate of the American Board of Professional Disability Consultants. It also overlooks the fact that Dr. Anchor is a Vocational Expert and Medical Advisor, Office of Hearings and Appeals; Social Security Administration and U.S. Railroad Retirement Board. In these latter capacities, Dr. Anchor gives evaluations in hundreds of disability cases every year. In short, Dr. Anchor is eminently qualified as a vocational expert and his testimony as to the vocational disability of Boruff was properly admitted in evidence.

Calaman also insists that the trial court in assessing the degree of liability, did not

give enough weight to the fact that Boruff is presently employed as a truck driver, or to the fact that Dr. Reid, the treating physician, placed no specific restriction of the physical activities of Boruff. These of course are factors to be considered by a trier of fact in determining vocational disability. So far as the record shows, this evidence was considered by the trial court. We have considered it in our review; and in our opinion the evidence of anatomical and vocational disability is sufficient to support the finding that Boruff has a permanent partial disability of forty-five percent to the body as a whole.

Boruff seeks to have this Court impose a penalty on Calaman for its failure to pay temporary total disability benefits, and also the statutory penalty for a frivolous appeal. *See* T.C.A. §§ 50–6–225(k) and 27–1–122. We see no basis for the imposition of either penalty in this case. The employer-employee relationship was not so evident that a lack of good faith can be attributed to Calaman for first testing the nature of the relationship in the trial court before paying any benefits. Neither can we say that an appeal of the trial judge's finding on the issue was frivolous since the issue is one of fact and this Court is directed to review the evidence *de novo*.

The judgment of the trial court is affirmed. The cause is remanded to enforce the trial court's judgment. Post judgment interest will be computed as provided in T.C.A. § 50–6–225(h). Costs of the appeal will be paid by Calaman and its surety.

DROWOTA, C.J., and FONES, O'BRIEN and DAUGHTREY, JJ., concur.