

**FILED**

February 10, 2015

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 8:45 AM

## TENNESSEE DIVISION OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | | |
|---|---|---|---|
| Employee:  Jason Thompsen | ) | Docket No.  2014-04-0012 | |
| | ) | | |
| Employer:  Concrete Solutions | ) | State File No.  77580-2014 | |

In accordance with Rule 0800-02-22-.02(6), please find attached the Workers' Compensation Appeals Board's Order and Opinion Affirming and Remanding Interlocutory Order of Court of Workers' Compensation Claims in the referenced case.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Order and Opinion Affirming and Remanding Interlocutory Order of Court of Workers' Compensation Claims was sent to the following recipients by the following methods of service on this the 10th day of February, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Greg Groth | | | | | X | greg@greggrothlaw.com |
| B. Duane Willis | | | | | X | dwillis@morganakins.com |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov



# TENNESSEE DIVISION OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

**FILED**

February 10, 2015

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 8:45 AM

| | |
|---|---|
| Employee: Jason Thompsen | ) Docket No. 2014-04-0012 |
| | ) |
| Employer: Concrete Solutions | ) State File No. 77580-2014 |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Kenneth M. Switzer, Judge | ) |

---

### Affirmed and Remanded - February 10, 2015

---

## ORDER AND OPINION AFFIRMING AND REMANDING INTERLOCUTORY ORDER OF COURT OF WORKERS' COMPENSATION CLAIMS

This interlocutory appeal involves a concrete worker who fell and fractured his left ankle while performing work at a job site. The employer denied the claim, asserting the claimant was an independent contractor at the time of the accident. In its Interlocutory Order, the trial court found that the claimant was an employee, not an independent contractor, and that the employee was entitled to medical benefits. The trial court concluded that the employee had not established entitlement to temporary disability benefits. The employer appealed, arguing: (1) the trial court improperly denied employer the opportunity for an evidentiary hearing; and (2) the evidence preponderates against the conclusion of the trial court that the claimant was an employee. Having carefully reviewed the record, we affirm the decision of the Court of Workers' Compensation Claims.

Judge Timothy W. Conner delivered the opinion of the Appeals Board, in which Judge Marshall L. Davidson, III, and Judge David F. Hensley, joined.

B. Duane Willis, Nashville, Tennessee, for the employer-appellant, Concrete Solutions

Greg Groth, Cookeville, Tennessee, for the employee-appellee, Jason Thompsen

1

## Factual and Procedural Background

The claimant, Jason Thompsen, is a forty-nine year-old resident of Putnam County, Tennessee. In late May 2014, the claimant met with Eric Turney, owner of Concrete Solutions, to discuss the possibility of the claimant assisting on a concrete construction project. Mr. Turney was in need of immediate help because he did not feel that the foreman he had on site was capable of performing the job. He was aware that the claimant had experience with "vertical concrete" construction and he needed someone with this specialized knowledge to act as superintendent on the job site.

With respect to the issue of compensation, the claimant testified that he wanted to be hired as a regular employee, but Mr. Turney informed him that he was not capable of "doing payroll" at that time and that all the workers would receive a Form 1099 at the end of the year. The claimant accepted these conditions and both parties agreed that he would be paid at a rate of $15.00 per hour. Once the claimant was on site, he concluded that additional workers were needed to complete the job. He recommended two individuals to Mr. Turney, who in turn gave the claimant the authority to hire the workers. Both parties agreed, however, that Mr. Turney would pay the workers an hourly rate. The claimant acknowledged that he had the authority to fire these workers if they were not capable of performing the work.

The claimant testified that he had his own tool belt, hammer and nail bag. However, the company provided power tools, drills, and a concrete vibrator. Mr. Turney acknowledged that he also supplied a bobcat, a demolition saw, and extension cords. He testified that the company rented concrete forms and purchased lumber and materials for the concrete forms as needed. He also purchased rebar and rented an all-terrain forklift.

The claimant testified that he and the crew generally were expected to work 7:00 a.m. to 3:30 p.m. At some point, they switched work hours to 6:00 a.m. to 2:30 p.m. to avoid the afternoon heat. However, he also acknowledged that the work hours were "pretty informal" and the only restriction was to not exceed forty hours a week. The claimant also admitted that he was free to offer his services to other companies while working for Mr. Turney. However, he testified that, given the workload, he "didn't have time" to work other jobs.

On July 10, 2014, the claimant was working near the middle of the structure under construction and was attempting to install a piece of decking when part of the structure collapsed and he fell approximately ten feet. He landed on his left leg. He contacted Mr. Turney after the accident and informed him of the fall. The claimant advised Mr. Turney that he intended to go to Satellite Medical. After x-rays confirmed a leg fracture, he was referred to Tier One Orthopedics, where he saw Dr. Gregory Roberts. He was advised that surgery was needed to repair the fracture and insert hardware into his leg.

Both parties acknowledged that a conversation occurred after the recommendation for surgery concerning the medical expenses associated with surgery. Both parties testified that Mr. Turney agreed to pay for the surgery. The claimant testified that he assumed Mr. Turney was offering to pay because he did not have workers' compensation insurance. Mr. Turney testified that he considered the claimant to be a "contract worker" who would not be covered by his workers' compensation insurance and that he offered to pay for the surgery because he knew that the claimant was financially unable to pay.

In late August or early September 2014, the claimant contacted Mr. Turney to see if he had any work available. Mr. Turney agreed to bring him back to work as a supervisor at a different job site. Mr. Turney testified that he was in the process of forming a limited liability company and was offering all workers the option to become "employees" instead of contract workers. Mr. Turney testified that most of his regular workers agreed to become employees, but three elected to remain "contract workers." He further testified that he now gives preference to his employees for work assignments and only uses contract workers when there is sufficient work available.

After working several weeks, the claimant approached Mr. Turney to ask that the company pay for an ultrasound and follow-up visits with Dr. Roberts. Mr. Turney replied that he was financially unable to pay for the additional medical treatment. The claimant testified that he became aware that Mr. Turney had workers' compensation insurance and asked that a claim be submitted to the insurer. He then contacted an attorney.

On October 28, 2014, a Petition for Benefit Determination was filed. After mediation was unsuccessful, a Dispute Certification Notice was filed November 24, 2014.[1] Thereafter, a Request for Expedited Hearing was filed on December 3, 2014. On the Request for Expedited Hearing, the claimant's attorney noted, "a hearing is necessary for the Judge to determine the work status of the Employee and decide whether or not medical benefits and temporary total disability benefits should be paid by the Employer and Carrier." On the portion of the form concerning witnesses, the claimant's attorney noted that two witnesses would testify by deposition. On December 31, 2014, counsel for the claimant submitted to the Court the depositions of Jason Thompsen and Eric Turney and asked that the depositions be considered "as part of Mr. Thompsen's proof in this claim." The employer did not object to the introduction of these depositions for proof. In fact, Employer's Response to Motion for Expedited Hearing, filed January 2, 2015, cited extensively to the deposition testimony.

A hearing was scheduled for January 6, 2015. On that date, the Court entered an Agreed Order of Continuance, rescheduling the hearing for January 27, 2015. Prior to

---

[1] On the Dispute Certification Notice ("DCN"), the mediator indicated that medical records had been exchanged and that the parties had "agreed to their admissibility in future hearings." Neither party objected to the DCN.

the date of the rescheduled hearing, the trial court entered an Order on January 15, 2015 addressing the issues raised in the Request for Expedited Hearing. In its Order, the trial court noted that it had reviewed "Mr. Thompsen's request, both parties' sworn deposition testimony and stipulated medical evidence, and pursuant to Tennessee Code Annotated section 50-6-239(d)(1) and (2), *infra*, and Mediation and Hearing Procedures Rule 0800-02-21-.14(1)(c), the undersigned determines that no additional information is needed to determine whether . . . Mr. Thompsen is likely to prevail at a hearing on the merits of the claim." The trial court held that Mr. Thompsen was an employee, that he was entitled to medical benefits, but that he was not entitled to temporary disability benefits. The Employer timely filed a Notice of Appeal on January 22, 2015. The case was submitted to the Appeals Board on February 3, 2015.

## Standard of Review

The standard of review to be applied by the Appeals Board in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2014). The trial court's decision must be upheld unless "the rights of the party seeking review have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A) Violate constitutional or statutory provisions;
(B) Exceed the statutory authority of the workers' compensation judge;
(C) Do not comply with lawful procedure;
(D) Are arbitrary, capricious, characterized by abuse of discretion, or clearly unwarranted exercise of discretion; or
(E) Are not supported by evidence that is both substantial and material in the light of the entire record.

Tenn. Code Ann. § 50-6-217(a)(2) (2014).

In applying the above standard, courts have construed substantial and material evidence to mean "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Clay County Manor, Inc. v. State of Tennessee*, 849 S.W.2d 755, 759 (Tenn. 1993) (*quoting Southern Railway Co. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984)). Like other courts applying the standard embodied in section 50-6-217(a)(2), the Appeals Board will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

## Analysis

### A. Lack of an Evidentiary Hearing

The procedure for resolving a Request for Expedited Hearing is governed by Tennessee Code Annotated section 50-6-239 and the Rules of the Tennessee Department of Labor, Division of Workers' Compensation. The statute provides as follows:

(d) Hearings of disputes on an expedited basis shall be conducted in the following manner:

(1) Upon motion of either party made at any time after a dispute certification notice has been issued by a workers' compensation mediator, a workers' compensation judge *may, at the judge's discretion*, hear disputes over issues provided in the dispute certification notice concerning the provision of temporary disability or medical benefits on an expedited basis and enter an interlocutory order upon determining that the injured employee would likely prevail at a hearing on the merits. . . .

(2) A workers' compensation judge *is not required to hold a full evidentiary hearing before issuing an interlocutory order for temporary disability or medical benefits*.

Tenn. Code Ann. § 50-6-239(d) (2014) (emphasis added).

The Rules of the Division of Workers' Compensation further provide:

(1) After a case is placed on the docket, if there is a dispute over temporary disability or medical benefits, either party may request an expedited hearing

. . . .

. . . .

(c) Seven (7) business days after the motion is filed with the clerk, the clerk shall compile the file and the motion shall be assigned to a workers' compensation judge. Upon receipt of the file, the judge *shall have discretion* to either set the matter for a hearing or enter an interlocutory order based on a review of the file upon determining that no additional information is needed to determine whether the employee is likely to prevail at a hearing on the merits of the claim.

Tenn. Comp. R. & Regs. 0800-02-21-.14(1)(c) (2014) (emphasis added).

5

In its Memorandum in Support of Expedited Hearing Notice of Appeal, the employer argues that "to require the Defendant to pay benefits without the benefit of a hearing is violative of the Defendant's due process right afforded under both the United States and Tennessee Constitutions." Employer's position is unconvincing.

The Tennessee Supreme Court addressed a similar issue in *Freemon v. VF Corporation*, 675 S.W.2d 710 (Tenn. 1984). In *Freemon*, the workers' compensation claimant filed a motion for new trial, alleging that he intended to submit "newly discovered" information for the court's consideration. In rejecting the employee's argument, the Supreme Court stated, "a motion for new trial in a workers' compensation case may be summarily disposed of in the discretion of the trial judge, *with or without a hearing*, and any claim of prejudice by the moving party will not be entertained upon appeal." *Id.* at 712 (emphasis added). The Supreme Court has also held that a pre-trial order compelling an employer to initiate workers' compensation benefits is not a dispositive ruling on the merits, since the Court can readdress the issue at a subsequent hearing. *Shelton v. ADS Environmental Srvcs.*, 100 S.W.3d 214, 216-17 (Tenn. 2003); *see also McCall v. Nat'l Health Corp.*, 100 S.W.3d 209 (Tenn. 2003) (rejecting employer's contention that allowing a trial court to initiate temporary benefits at a pre-trial hearing violated the employer's due process rights).

In the present case, the employer has been given sufficient opportunity to present evidence and offer legal arguments. The Dispute Certification Notice reflects that the parties exchanged medical records and expressly agreed that such records would be admissible in future hearings. Counsel for the employer took the deposition of the claimant on December 17, 2014 and attended the deposition of Eric Turney the same day. In accordance with its Request for Expedited Hearing, Counsel for the claimant submitted the depositions for proof without objection. Counsel for the employer filed a written Response to Motion for Expedited Hearing, in which he cited extensively to the deposition testimony and offered legal argument in opposition to the request for temporary disability and medical benefits.

The trial court carefully considered the evidence properly before it. The court did not consider the affidavits of the parties, since those affidavits had not been filed in accordance with the court's Practice and Procedure guidelines. In its Memorandum in Support of Expedited Hearing Notice of Appeal, the employer did not identify other evidence it claims should have been admitted into evidence or considered by the court. Finally, because the trial court's order is interlocutory in nature, the Employer can seek to establish through other admissible evidence that the claimant was an independent contractor at the final compensation hearing. Neither the statute nor the applicable rules compels a hearing prior to the issuance of an interlocutory order. The employer's arguments on this issue are without merit.

6

## B. Employee versus Independent Contractor

To recover workers' compensation benefits, the claimant must be an employee and not an independent contractor or a casual employee. *Bargery v. Obion Grain Co.*, 785 S.W.2d 118, 121 (Tenn. 1990). Determining whether an individual is characterized as an employee or an independent contractor for workers' compensation purposes requires a specialized factual analysis. *Masiers v. Arrow Transfer & Storage Co.*, 639 S.W.2d 654, 656-57 (Tenn. 1982) (*citing Barnes v. Nat'l Mortg. Co.*, 581 S.W.2d 957 (Tenn. 1979)). No single aspect of a work relationship is conclusive in making this determination, and in deciding whether a worker is an employee or independent contractor, "the trier of fact must examine all relevant factors and circumstances" of the relationship. *Boruff v. CNA Ins. Co.*, 795 S.W.2d 125, 127 (Tenn. 1990). The fact that a company did not deduct social security or income taxes is not a controlling factor in deciding whether an employer-employee relationship existed. *Carter v. Sparta Elec. Sys.*, 690 S.W.2d 218 (Tenn. 1985).

The Tennessee Workers' Compensation Act requires that "[i]n a work relationship, in order to determine whether an individual is an 'employee,' or whether an individual is a 'subcontractor' or an 'independent contractor,' the following factors shall be considered:

(i)     The right to control the conduct of the work;
(ii)    The right of termination;
(iii)   The method of payment;
(iv)    The freedom to select and hire helpers;
(v)     The furnishing of tools and equipment;
(vi)    Self-scheduling of working hours; and
(vii)   The freedom to offer services to other entities."

Tenn. Code Ann. § 50-6-102(11)(D) (2014).

These factors are not absolutes that preclude examination of each work relationship as a whole and are no more than a means of analysis. *Masiers*, 639 S.W.2d at 656 (*citing Jackson Sawmill v. West*, 619 S.W.2d 105 (Tenn. 1981)). While no single factor is determinative, the Tennessee Supreme Court "has repeatedly emphasized the importance of the right to control, the relevant inquiry being whether the right existed, not whether it was exercised." *Galloway v. Memphis Drum Service*, 822 S.W.2d 584, 586 (Tenn. 1991). Once it is established that an employment relationship exists, "the burden is on the employer to prove the worker was an independent contractor rather than an employee." *Id.* Another factor that has gained significance is the right of termination. *Masiers*, 639 S.W.2d at 656 (*citing Wooten Transports, Inc. v. Hunter*, 535 S.W.2d 858 (Tenn. 1976)). "As noted in *Masiers* [citation omitted], 'the power of a party to a work

contract to terminate the relationship at will is contrary to the full control of work activities usually enjoyed by an independent contractor.'" *Boruff*, 795 S.W.2d at 127.

In the present case, the employer insists that the parties intended to create an independent contractor relationship and that this was "agreed upon." However, Tennessee law is clear that the intent of the parties is not dispositive on this issue. In *Fayette Janitorial Services & Technology Insurance Company v. Kellogg*, No. W2011-01759-COA-R3-CV, 2013 Tenn. App. LEXIS 66 (Tenn. Ct. App. Feb. 4, 2013), the direct employer of an injured worker sued in tort the company where the injured worker had been injured, seeking reimbursement of amounts paid in workers' compensation benefits. In response, the defendant asserted that it was a "statutory employer" and thus immune from suit in tort. In addressing the issue of the intent of the parties, the Court of Appeals stated:

> We first note that the designation given by the parties in their contract does not dictate the applicability of the Workers' Compensation Law. Our Supreme Court has stated that "a contract purporting to establish the plaintiff as an 'independent contractor' is insufficient when the facts surrounding the arrangement indicate [otherwise]." [Citation omitted.] Such a provision is not dispositive . . . .

*Id.* at *16-17; *see also Barber v. Purina*, 825 S.W.2d 96, 100 (Tenn. Ct. App. 1992) ("the issue of whether one is an employee or an independent contractor is one of law").

With respect to the specific statutory criteria set forth in Tennessee Code Annotated section 50-6-102(10)(D), the facts support the trial court's determination that the claimant was an employee. In regard to the most important factor, the right to control the conduct of the work, there is no question that the claimant was hired to supervise this particular job because of his specialized knowledge regarding vertical concrete construction. It is also true that Mr. Turney did not visit this job site on a regular basis. The claimant testified that he spoke to Mr. Turney by telephone approximately once a week regarding this project. Nevertheless, there is sufficient evidence that Mr. Turney retained the right to control the conduct of the work; whether he exercised that right is irrelevant. The claimant testified without contradiction that he and his crew were expected to report to work at regular hours each day and were told not to exceed forty hours per week. Mr. Turney testified that his company's primary focus is concrete construction, including driveways, patios, sidewalks, garage slabs, building slabs and porches. The claimant was hired to supervise a project that is part of the company's regular business. In *Fayette Janitorial Services*, one of the elements addressed by the court in determining whether Kellogg was a statutory employer or a general contractor was whether "the work being performed . . . is part of the regular business of the company *or* is the same type of work usually performed by the company's employees." *Fayette Janitorial Services*, *supra* at *30. The present case presents an analogous

8

situation. Here, the claimant was not hired to oversee a project outside the normal scope of the company's business, but was hired to supervise a project that was a regular part of the company's business. Mr. Turney retained the right to control the conduct of the work. The fact that he chose to rely heavily on the claimant's technical expertise does not tend to make the claimant an independent contractor.

It is also apparent that Mr. Turney retained the right of termination. This is evidenced by the fact that the prior supervisor on this project was, in fact, terminated. There is no evidence to suggest that the claimant was given the autonomy to complete the project independently, regardless of the progress toward completion. Had the claimant failed to exhibit the specialized knowledge or expertise to complete the project, Mr. Turney could have replaced him at any time.

The method of payment, though not determinative, supports the trial court's conclusion that the claimant was an employee. In a typical construction subcontractor scenario, an independent contractor offers a bid on a particular job and agrees to complete the project based on that bid. In this case, the claimant agreed to accept an hourly rate offered by Mr. Turney. Moreover, the fact that Mr. Turney called his workers "contract workers" does not weigh in favor of a conclusion that they were independent contractors. Mr. Turney was clear in his testimony that he classified his workers as "contract workers" because "I did not do payroll. Everybody was 1099." He also stated that it was a "cleaner way for me to produce the work."

The "freedom to select and hire helpers" further supports the trial court's conclusion. If an independent contractor requires help to assist in the completion of the job, he typically will hire workers and pay them from the proceeds of the job. In the present case, when it became evident that the claimant needed more workers, he was given authority to hire workers, but those workers were also paid an hourly rate by Mr. Turney. These facts suggest an employer-employee relationship.

With respect to the furnishing of tools and equipment, the parties agreed that only small, personal tools were brought to the job site by the claimant. Large tools, power tools and equipment were supplied by the company. This is uncontradicted and supports the trial court's conclusion.

Regarding the scheduling of work hours, the claimant testified without contradiction that he and his crew generally were expected to work an eight-hour day, and no more than forty hours per week. While the claimant admitted that the hours were "pretty informal," he also testified that if he was not on the job site, he would not get paid. These conditions suggest an employee-employer relationship.

Finally, with respect to the freedom to offer services to other entities, both parties agreed that the claimant was free to offer his services to other companies, though the

9

claimant testified that, as a practical matter, the demands of this job made it impractical to work elsewhere. This is the only statutory factor which would tend to support a finding that the claimant was an independent contractor. However, it is insufficient, in and of itself, to support a reversal of the trial court's decision.

## Conclusion

The trial court in this case complied with the statute in electing to issue an Interlocutory Order without holding a full evidentiary hearing. The court carefully reviewed the admissible evidence and each party had the opportunity to submit argument in the form of written position statements. Furthermore, there is sufficient evidence to support the trial court's conclusion that the claimant was an employee as that term is defined in the Tennessee Workers' Compensation Act and that he is entitled to reasonable and necessary medical benefits for his work-related injury.

**Timothy W. Conner, Judge**
**Workers' Compensation Appeals Board**