**FILED**

**April 18th, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 12:57 PM**



## BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT KNOXVILLE

| | |
|---|---|
| **RYAN D. TIMMERMAN,** ) | **Docket No.: 2014-03-0022** |
| Employee, ) | |
| v. ) | **State File Number: 8468-2014** |
| **INSTA DRI OF KNOXVILLE,** ) | |
| Employer. ) | **Judge Pamela B. Johnson** |
| ) | |

---

## EXPEDITED HEARING ORDER
## DENYING MEDICAL AND TEMPORARY DISABILITY BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the Employee, Ryan Timmerman, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issues are (1) whether Mr. Timmerman sustained an injury arising primarily out of and in the course and scope of employment with the Employer, Insta Dri of Knoxville; (2) whether Mr. Timmerman is entitled to past or future medical benefits; and (3) whether Mr. Timmerman is entitled to past or future temporary disability benefits. For the reasons set forth below, the Court finds Mr. Timmerman failed to demonstrate that he is likely to prevail at a hearing on the merits on the issues of compensability and entitlement to medical and temporary disability benefits.[1]

### History of Claim

Mr. Timmerman is a thirty-one-year-old resident of Knox County, Tennessee. Insta Dri employed Mr. Timmerman as a crew supervisor in crawlspace encapsulation. (T.R. 1.) On July 7, 2014, Mr. Timmerman allegedly sustained injury to his right eye when an object flew and struck his eye while working for Insta Dri. (T.R. 1.)

Mr. Timmerman came under the care of Dr. Nicholas G. Anderson of Southeastern Retina Associates. On July 10, 2014, Mr. Timmerman presented with eye pain, and reported "at work today a unknown object, maybe a rock, flew into pt OD."

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

1

(Ex. 6, 07/10/2014 Office Note.) Dr. Tod A. McMillan diagnosed a ruptured globe, unspecified OD, and prescribed eye drops. *Id.*

Mr. Timmerman remained under the care of Southeastern Retina physicians. *Id.* In subsequent visits, Mr. Timmerman reported experiencing a pressure sensation in the right eye. (Ex. 6, 07/12/2014 Office Note.) On July 14, 2014, Dr. Joseph M. Googe recommended immediate surgery to include PPV, lensectomy, and an injection of antibiotics into the right eye. (Ex. 6, 07/14/2014 Office Note.) Mr. Timmerman underwent the recommended surgery the same day, performed by Dr. Nicholas G. Anderson. (Ex. 6, Vitreo-retinal Surgery Sheet.)

Post-operatively, Mr. Timmerman returned to Southeastern Retina and saw Dr. Anderson, who diagnosed (1) endophthalmitis OD; (2) status-post vitreo-retinal surgery OD; and (3) repaired ruptured globe, unspecified OD. (Ex. 6, 07/15/14 Office Note.) Following surgery, Mr. Timmerman continued to report blurred vision in the right eye with intermittent eye pain, flashes and floaters, and headaches. (*See generally* Ex. 6.)

The Employee's Prehearing Brief averred Mr. Timmerman received medical treatment on the day of the incident from Dr. Dorian Lain, who referred him to Baptist Eye Surgeons. That same afternoon, Mr. Timmerman received stitches to a split cornea. Thereafter, Mr. Timmerman came under the care of Southeastern Retina Specialists, who eventually referred him to Tennessee Valley Eye Center, where he underwent a lens-implant surgery on March 12, 2015. (*See generally* T.R. 15.) The parties did not introduce the medical records of Dr. Lain, Baptist Eye Surgeons, or Tennessee Valley Eye Center.

Mr. Timmerman filed a Petition for Benefit Determination (PBD) on October 24, 2014, seeking temporary disability and medical benefits for the alleged work-related injury. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice (DCN) on January 20, 2015. Mr. Timmerman filed a Request for Expedited Hearing, and this Court heard the matter on March 1, 2016.

At the Expedited Hearing, Mr. Timmerman failed to appear, purportedly due to lack of childcare, and his attorney moved for a continuance. This Court denied the motion for several reasons, including the following: sixteen months passed between the filing of the PBD and the Expedited Hearing, the Court previously granted two continuances, the parties selected the date of the Expedited Hearing, and the Court sent notice of the date of the Expedited Hearing six weeks in advance.

Mr. Timmerman, through counsel, relied upon his affidavit, and asserted he was an employee of Insta Dri when he injured his right eye on July 10, 2014. Insta Dri was without workers' compensation insurance coverage when the injury occurred. As a result

of the work injury, Mr. Timmerman incurred medical bills, lost wages and lost use of his right eye. (*See generally* Ex. 1 and T.R. 17-20.)

Insta Dri called Kevin Jardet, the owner of Insta Dri, to testify at the Expedited Hearing. Mr. Jardet denied Mr. Timmerman was an employee of Insta Dri, stating Mr. Timmerman worked for Insta Dri as an independent contractor. Mr. Jardet testified that Mr. Timmerman was at all times a subcontractor for Insta Dri and Mr. Timmerman was aware of the same.

Mr. Jardet testified Insta Dri did not pay taxes for its subcontractors and its subcontractors did not complete W-4 forms. When he started Insta Dri, Mr. Jardet spoke to an insurance agent and told the agent he intended to use subcontractors. According to Mr. Jardet, the insurance agent advised him he did not need workers' compensation insurance coverage. Insta Dri became defunct in January 2015, with no account receivables and no assets.

Mr. Jardet testified Mr. Timmerman and two co-workers worked in crawl spaces removing insulation, wiping off mold, and installing sump pumps. Mr. Jardet sold the jobs, and Mr. Timmerman performed the work sold by Mr. Jardet. Mr. Jardet did not supervise Mr. Timmerman or his work.

Mr. Jardet left it to Mr. Timmerman to decide when he wanted to complete the job. Insta Dri paid Mr. Timmerman and his co-workers a flat fee for the work performed. At the completion of the job, Insta Dri collected payment from the customer, then paid Mr. Timmerman and his co-workers. Mr. Timmerman received more as the job superintendent. Insta Dri issued 1099s to Mr. Timmerman and his co-workers individually.

Further, Mr. Jardet had authority to fire Mr. Timmerman and Mr. Timmerman had the right to quit. Mr. Jardet acknowledged Mr. Timmerman had the right to hire additional people as well as the authority to fire his two co-workers. Insta Dri also retained the right to fire Mr. Timmerman's co-workers. Mr. Jardet stated if Mr. Timmerman hired additional workers to complete a job, then Mr. Timmerman's pay would be reduced.

Mr. Jardet stated that Insta Dri supplied Mr. Timmerman and his co-workers with their safety equipment – eyeglasses, masks, and gloves – and a razor knife. However, Mr. Jardet indicated if Mr. Timmerman lost any of the equipment provided, then Mr. Timmerman was responsible for replacing the equipment.

Mr. Jardet testified that Mr. Timmerman, as the crew leader, determined the hours worked by himself and his co-workers. Mr. Timmerman had the right to sell a similar job and perform the work himself so long as Insta Dri's name was not attached to the sale or

3

work performed. Further, Mr. Timmerman was a floor technician and worked in that capacity outside any relationship with Insta Dri.

Mr. Jardet testified he was not in town when the alleged incident occurred. His brother, Chris Jardet, and two of his co-workers later informed Mr. Jardet that an incident involving Mr. Timmerman occurred on the job. Mr. Timmerman did not contact him until eight months later when he received a letter in the mail advising him Mr. Timmerman was seeking workers' compensation benefits. Mr. Timmerman did not work again for Insta Dri following the incident.

### Findings of Fact and Conclusions of Law

In a workers' compensation claim, Mr. Timmerman has the burden of proof on all essential elements of his claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). At an Expedited Hearing, Mr. Timmerman does not have to prove every essential element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must present sufficient evidence from which the Workers' Compensation Judge can determine that he is likely to prevail at a hearing on the merits. *Id.*

To award workers' compensation benefits, the Court must find that Mr. Timmerman was an employee and not an independent contractor. *Bargery v. Obion Grain Co.*, 785 S.W.2d 118, 121 (Tenn. 1990). Determining whether an individual worked as an employee or an independent contractor requires a specialized factual analysis. *Masiers v. Arrow Transfer & Storage Co.*, 639 S.W.2d 654, 656-57 (Tenn. 1982) (citing *Barnes v. Nat'l Mortg. Co.*, 581 S.W.2d 957 (Tenn. 1979)). No single aspect of a work relationship is conclusive in making this determination, and in deciding whether a worker is an employee or independent contractor, "the trier of fact must examine all relevant factors and circumstances" of the relationship. *Boruff v. CNA Ins. Co.*, 795 S.W.2d 125, 127 (Tenn. 1990).

The Workers Compensation Law provides:

In a work relationship, in order to determine whether an individual is an 'employee,' or whether an individual is a 'subcontractor' or an 'independent contractor,' the following factors shall be considered:

   (a) The right to control the conduct of the work;
   (b) The right of termination;
   (c) The method of payment;
   (d) The freedom to select and hire helpers;

4

(e) The furnishing of tools and equipment;

(f) Self-scheduling of working hours; and

(g) The freedom to offer services to other entities[.]

Tenn. Code Ann. § 50-6-102(12)(D)(i) (2015).

In *Jewell v. Cobble Construction and Arcus Restoration*, No. 2014-05-0003, 2015 TN. Wrk. Comp. App. Bd. LEXIS 1 (Tenn. Workers' Comp. App. Bd. Jan. 12, 2015), the Workers' Compensation Appeals Board analyzed the employee versus independent contractor relationship. The Appeals Board stated "[t]hese factors are not absolutes that preclude examination of each work relationship as a whole and are no more than a means of analysis." *Jewell,* 2015 TN. Wrk. Comp. App. Bd. LEXIS at \*15. While no single factor is determinative, the Tennessee Supreme Court "has repeatedly emphasized the importance of the right to control, the relevant inquiry being whether the right existed, not whether it was exercised." *Id.* Once it is established that an employment relationship exists, "the burden is on the employer to prove the worker was an independent contractor rather than an employee." *Id.* Another factor that has gained significance is the right of termination. *Id.* at \*16. "[T]he power of a party to a work contract to terminate the relationship at will is contrary to the full control of work activities usually enjoyed by an independent contractor." *Id.*

In the present case, and considering the statutory factors separately, the Court finds as follows:

(a) Mr. Timmerman maintained the right to control the conduct of the work. Mr. Jardet testified that he did not supervise Mr. Timmerman or his work.

(b) Mr. Jardet had the right of termination. Mr. Jardet testified, as the owner of Insta Dri, he had the authority to fire Mr. Timmerman, but Mr. Timmerman could also quit.

(c) The method of payment demonstrates an independent contractor relationship. Mr. Jardet testified Insta Dri paid Mr. Timmerman per job completed.

(d) Mr. Timmerman had the right to select and hire helpers. Mr. Jardet testified Mr. Timmerman could hire and/or fire co-workers to assist him in the completion of the project. Mr. Timmerman's hiring of additional co-workers would dilute the pay Mr. Timmerman received at the completion of the project.

(e) Insta Dri furnished Mr. Timmerman's safety equipment. Mr. Jardet testified he provided Mr. Timmerman with his initial safety equipment − eyeglasses, masks, and gloves − and a razor knife. If Mr. Timmerman lost one of these items, Mr. Timmerman would be responsible for replacing the item lost.

5

(f) Mr. Timmerman had the right to self-schedule his working hours. Mr. Jardet testified he sold the job and Mr. Timmerman completed the work. Mr. Timmerman determined when he and his co-workers worked to complete the job.

(g) Mr. Timmerman had the freedom to offer services to other entities. Mr. Timmerman had the right to sell another job and perform the work himself, so long as Insta Dri's name was not attached to the sale or work performed. Mr. Timmerman was a floor technician and worked in that capacity outside any relationship with Insta Dri.

Upon careful consideration of the factors set forth above and the evidence introduced at the Expedited Hearing, this Court finds Mr. Timmerman worked for Insta Dri as an independent contractor, not an employee. Therefore, as a matter of law, this Court finds Mr. Timmerman failed to establish that he is likely to prevail at a hearing on the merits. His request for medical and temporary disability benefits is denied at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Timmerman's claim against Insta Dri of Knoxville and its workers' compensation carrier for the requested medical and temporary disability benefits is denied at this time.

2. This matter is set for an Initial (Scheduling) Hearing on June 15, 2016, at 9:30 a.m. Eastern time.

**ENTERED this the 18th day of April, 2016.**

**JUDGE PAMELA B. JOHNSON**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with Judge Pamela B. Johnson, Court of Workers' Compensation Claims. The parties or their counsel must call toll-free (855) 543-5041or (865) 594-0109 to participate in the Initial Hearing. Failure to call in may result in a determination of the issues without further participation.

Right to Appeal:

6

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an

7

interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:

- EXHIBIT 1: Affidavit of Ryan Timmerman;
- EXHIBIT 2: Medical Expenses from Southeastern Retina Associates, P.C.;
- EXHIBIT 3: Medical Expenses from University Health System;
- EXHIBIT 4: Medical Expenses from University Anesthesiologists;
- EXHIBIT 5: Medical Expenses from Baptist Eye Surgeons; and
- EXHIBIT 6: Medical Certification and Medical Records of Southeastern Retina Associates, P.C.

Technical Record:

- Petition for Benefit Determination, filed October 24, 2014;
- Dispute Certification Notice, filed January 20, 2015;
- Request for Expedited Hearing, filed May 4, 2015;
- Show Cause Order, issued August 19, 2015;
- Order of Dismissal without Prejudice, issued September 9, 2015;
- Order Setting Aside Order of Dismissal, issued September 10, 2015;
- Order, issued October 12, 2015;
- Motion for Continuance, filed November 3, 2015;
- Employee's Pre-Hearing Brief, filed November 11, 2015;
- Order, issued November 13, 2015;
- Respondent's Pre-Hearing Brief, filed November 19, 2015;
- Motion for Continuance, filed January 14, 2016; and
- Order of Continuance, issued January 14, 2016.

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 18th day of April, 2016.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|----------------|-----|-------|------------------|
| Patrick C. Woodside, Employee's Attorney | | | X | patrickcwoodside@gmail.com |
| Robert Seth Oakes, Employer's Attorney | | | X | soakes@tcflattorneys.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

10