FILED

December 21, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 3:30 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KINGSPORT

| | |
|---|---|
| James Peters | ) Docket No.: 2015-02-0209 |
|     **Employee,** | ) |
| v. | ) **State File Number: 49650/2015** |
| Johnathan Mitchell d/b/a/ | ) |
| A Clean Connection, LLC | ) |
|     **Employer,** | ) **Judge Brian K. Addington** |
| And | ) |
| Auto-Owners Insurance, | ) |
|     **Insurance Company.** | ) |
| | ) |

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

This cause came before the undersigned workers' compensation judge on December 11, 2015, for an Expedited Hearing. The present focus of this case concerns the employee's right to medical treatment and temporary benefits after suffering a fall at work. The central legal issue is whether the employee is an independent contractor or an employee.[1] For the reasons set forth below, the Court grants medical benefits at this time.

### History of Claim

Employee, James Peters, is a forty-year-old resident of Sullivan County, Tennessee. (T.R. 1 at 1.) He testified that he has worked for Jonathan Mitchell d//b/a A Clean Connection, LLC for fifteen years, primarily as laborer. His last job with A Clean was as a supervisor cleaning the rafters at Aurora Casket Company one day per month. A Clean provided safety equipment such as masks and glasses at the work site. Mr. Peters testified he primarily worked for a different employer, Peter's Garages.

Mr. Peters testified that on March 10, 2015, he arrived at Aurora and began preparing for the shift. He climbed a ladder into a scissor lift provided by Aurora to do the job. He slipped from the ladder and landed hard on concrete. He called Jonathan

---

[1] Additional information regarding the certified issues, technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an Appendix.

Mitchell, the owner of A Clean, and reported the accident. He later spoke to Mr. Mitchell about the accident when Mr. Mitchell arrived at Aurora to inspect the crew's work. Although his right foot hurt, after discussing the matter with Mr. Mitchell, Mr. Peters did not request medical treatment at that time.

In April 2015, Mr. Peters discussed the pain in his right foot with Mr. Mitchell, when Mr. Mitchell contacted him about working at Aurora Casket that month. Mr. Peters did not know what was wrong with his foot, but his foot still hurt. Mr. Mitchell told him he may have chipped or broken it and that maybe he should see a doctor. Mr. Peters did not seek medical attention at that time but waited a few more weeks. Mr. Peters worked for A Clean that month.

Mr. Peters chose to go to the emergency room at Holston Valley Medical Center on May 12, 2015. He provided a history of a fall from a ladder onto "dirt," and advised that the accident occurred eight weeks earlier. (Ex. 3 at 2.) X-rays of Mr. Peters' right foot were negative for acute fracture or dislocation. *Id.* at 6. The providers diagnosed right foot strain, but issued no restrictions. *Id.* at 7. Mr. Peters did not inform Mr. Mitchell he was going to the emergency room or what had happened at the hospital. A Clean received a bill for Mr. Peters' treatment

Following his hospital visit, Mr. Peters returned to work the next scheduled workday; however, Aurora Casket had cancelled the cleaning for May 2015, and neither Mr. Peters nor the other employees worked that day.

In June, Mr. Mitchell testified he contacted Mr. Peters by text and told him he no longer needed him if he were unable to work. Mr. Mitchell also testified, however, that Mr. Peters never told him about work restrictions. Mr. Mitchell testified A Clean could have worked Mr. Peters on the floor instead of the scissor lift in order to meet his restrictions. Mr. Mitchell replaced Mr. Peters on the Aurora Casket work crew, because it was a five-man job.

On July 20, 2015, Mr. Peters signed a physician panel provided by A Clean and chose Dr. Kent Lord. (Ex. 2 at 3.) Dr. Lord first examined Mr. Peters on August 5, 2015, and diagnosed a right foot sprain. (Ex.4 at 5.) Dr. Lord prescribed a pneumatic tall walking boot and insert. *Id.* Dr. Lord placed Mr. Peters on work restrictions, including work in the boot with the insert and no climbing ladders or scaffolding equipment. *Id.* Mr. Peters also discussed his prior treatment and missed work. Dr. Lord was unaware of the emergency room treatment notes, but he opined limiting activity after a foot sprain is not unreasonable. *Id.*

Mr. Peters testified he returned to Dr. Lord on September 2, 2015. Mr. Peters told Dr. Lord he had returned to work. Dr. Lord opined Mr. Peters had improved. The parties did not provide the medical records from the September 2, 2015 visit. Mr. Peters did not

return to visit Dr. Lord. Mr. Peters testified there were some issues with scheduling therapy following the September 2, 2015 visit, but neither he nor A Clean explained the issues to the Court.

Mr. Peters testified Dr. Lord released him to work approximately two months prior to the Expedited Hearing.

A Clean presented a wage statement indicating Mr. Peters earned $1,795.40 during the fifty-two weeks preceding the accident date. Mr. Peters' average weekly wage would be $34.53, but the minimum compensation rate of $127.20 applies. Mr. Gibson testified he did a number of other jobs for A Clean that were not included on the wage statement.

Mr. Peters filed a Petition for Benefit Determination on June 29, 2015, requesting temporary disability benefits and medical benefits. (T.R. 1 at 1.) The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice on August 21, 2015. (T.R. 2.) Mr. Peters filed a Request for Expedited Hearing, pursuant to Tennessee Code Annotated section 50-6-239 (2014). (T.R. 3.)

During the Expedited Hearing, Mr. Peters argued that he was an employee of A Clean and was entitled to additional medical and temporary disability benefits. He asserted that he worked for Mr. Mitchell for years and that one day Mr. Mitchell advised that his company would no longer have employees, but independent contractors. However, he continued to act as the supervisor at Aurora Casket work-site, and nothing else changed. He admitted he received a 1099, but not until late in the year. Mr. Peters asserted he does not own a business. He requested the Court to order a return appointment with Dr. Lord to either get a full work release or continued treatment for his work injury. He asserted he is entitled to temporary benefits for the three-month period he was unable to work.

A Clean contended that Mr. Peters was an independent contractor, not an employee, pursuant to Tennessee Code Annotated section 50-6-102(11)(D) (2014). Mr. Peters provided his own way to work. The client and not A Clean provided most of the equipment. Mr. Peters could hire workers, and he could work for other employers. A Clean did not monitor Mr. Peters' work, but provided some safety equipment. All A Clean would do was a final walk through occasionally with Aurora to make sure it was done. Mr. Peters could refuse work.

A Clean asserted Mr. Peters was not entitled to any medical benefits because he failed to submit an opinion from Dr. Lord proving causation. In addition, A Clean argued that it should not be held responsible for Mr. Peters' emergency room visit because he did not seek permission to go to the emergency room prior to his treatment.

3

## Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party, but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987); *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level or a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. Lexis 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

The first issue is whether Mr. Peters is an employee of A Clean or an independent contractor. The Tennessee Workers' Compensation Act requires that:

> In a work relationship, in order to determine whether an individual is an "employee," or whether an individual is a "subcontractor" or an "independent contractor," the following factors shall be considered:
>
> (i)   The right to control the conduct of the work;
> (ii)  The right of termination;
> (iii) The method of payment;
> (iv)  The freedom to select and hire helpers;
> (v)   The furnishing of tools and equipment;
> (vi)  Self-scheduling of working hours; and
> (vii) The freedom to offer services to other entities.

Tenn. Code Ann. § 50-6-102(11)(D) (2014).

The Worker's Compensation Appeals Board has stated the following regarding

these factors:

> These factors are not absolutes that preclude examination of each work relationship as a whole and are no more than a means of analysis. *Masiers,* 639 S.W.2d at 656 (citing *Jackson Sawmill v. West,* 619 S.W.2d 105 (Tenn. 1981)). While no single factor is determinative, the Tennessee Supreme Court "has repeatedly emphasized the importance of the right to control, the relevant inquiry being whether the right existed, not whether it was exercised." *Galloway v. Memphis Drum Service,* 822 S.W.2d 584, 586 (Tenn. 1991). Once it is established that an employment relationship exists, "the burden is on the employer to prove the worker was an independent contractor rather than an employee." *Id.* Another factor that has gained significance is the right of termination. *Masiers,* 639 S.W.2d at 656 (citing *Wooten Transports, Inc. v. Hunter,* 535 S.W.2d 858 (Tenn. 1976)). "As noted in *Masiers* [citation omitted], 'the power of a party to a work contract to terminate the relationship at will is contrary to the full control of work activities usually enjoyed by an independent contractor.'" *Boruff,* 795 S.W.2d at 127.

*Thompsen v. Concrete Solutions,* No. 2014-04-2012, 2015 TN Wrk. Comp. App. Bd. LEXIS 3, *14-16 (Tenn. Workers' Comp. App. Bd. Feb. 10, 2015).

The parties testified that there was a long-standing employment relationship between them, so A Clean has the burden to prove Mr. Peters was an independent contractor. The Court concludes that A Clean has failed to meet that burden. A Clean controlled when or if Mr. Peters worked. Mr. Mitchell testified the Aurora Casket crew was a five-man crew, and he replaced Mr. Peters when he decided Mr. Peters was unable to work. Instead of telling Mr. Peters their contract was terminated, Mr. Mitchell told him he was not needed. The right of termination belonged to Mr. Mitchell. Mr. Mitchell also testified he could have accommodated Mr. Peters' work restrictions, if Mr. Peters would have told him.

The next issue is whether Mr. Peters suffered an injury that arose primarily out of and in the course and scope of employment. The only disputed evidence about the injury in question is Mr. Peters' testimony that he landed on concrete while the medical records from the emergency room indicate he landed on dirt. A Clean presented no evidence to refute Mr. Peter's testimony that he was at work at Aurora Casket when he fell.

Dr. Lord is the authorized treating panel physician. He, along with the emergency room providers, noted Mr. Peters suffered a foot sprain. However, Dr. Lord's treatment ended before he provided a causation statement concerning Mr. Peters' sprain. Based on the evidence presented, the Court cannot make a determination on the causation of the Mr. Peters' injury, and it is unclear why Dr. Lord's treatment stopped when an issue

5

arose over therapy. A Clean did not present to the Court a Notice of Denial or a Notice of Controversy.

Tennessee Code Annotated section 50-6-102(13)(E) (2014) states that "The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians . . . shall be presumed correct on the issue of causation, but this presumption shall be rebuttable by a preponderance of the evidence."

Although Mr. Peters has the burden of proof on the issue of causation, and there is no causation opinion in the record, the Court finds that Dr. Lord's treatment ended prematurely. The Court makes no finding of fault concerning that issue. The Court finds the reasonable course at this time is to return Mr. Peters to Dr. Lord for a causation opinion of Mr. Peters' sprain. If Dr. Lord opines Mr. Peter's sprain arose primarily out of and in the course and scope of his employment, then A Clean shall pay for any unpaid treatment with Dr. Lord and shall authorize all treatment, if any, made reasonably necessary due to the injury. At this point, Mr. Peters has presented sufficient evidence for the Court to conclude that he is likely to succeed at a hearing on the merits of his request for authorized medical treatment, until Dr. Lord renders a causation opinion.

The final issues of payment of prior emergency room medical benefits and entitlement to temporary disability benefits are reserved, pending a causation statement by Dr. Lord. The parties must file an additional PBD for these reserved issues, if they do not reach agreement.

**IT IS, THEREFORE, ORDERED** as follows:

1. A Clean shall authorize a return appointment for Mr. Peters with Dr. Lord. If Dr. Lord opines Mr. Peters' condition arose primarily out and in the course and scope of his employment, A Clean or its workers' compensation carrier, shall provide all medical treatment made reasonably necessary by accident, including any unpaid prior treatment.

2. This matter is set for an Initial (Status) Hearing on January 22, 2016, at 10:30 a.m. Eastern Time.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the**

6

**necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Worker's Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 21st day of December, 2015.**

**Judge Brian K. Addington
Court of Workers' Compensation Claims**

Initial (Status) Hearing:

A Status Hearing has been set with **Judge Brian K. Addington, Court of Workers' Compensation Claims. You must call at 855-543-5044 to participate in the Initial Hearing.**

**Please Note:** **You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time (ET).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or

other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:
1. Affidavit of James Peters
2. Collective Exhibit containing a wage statement, Mr. Peters' 1099 Tax Form for year 2014 from A Clean Connection, LLC, and the Panel of Physicians
3. Medical Records: Holston Valley Medical Center
4. Medical Records: Dr. Kent Lord.

Technical record: [2]
1. Petition for Benefit Determination, June 29, 2015
2. Dispute Certification Notice, August 21, 2015
3. Request for Expedited Hearing, October 01, 2015

---

[2] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order for Medical Benefits was sent to the following recipients by the following methods of service on this the 21st day of December, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Sent To: |
|------|---------------|------------------|---------|------------|-----------|----------|
| **James Peters** | X | X | | | | **1812 Lamont Street Kingsport, TN 37664** |
| **Travis Ledgerwood, Employer/Carrier's Counsel** | | | | | X | **tledgerwood@manierherod.com** |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

9