**FILED**

**December 13, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 7:15 AM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| **RODRIGO AYALA GARCIA,** | ) | **Docket No.:  2016-07-0444** |
| **Petitioner,** | ) | |
| **v.** | ) | **State File No. 49908 0216** |
| | ) | |
| **MARK HALE d/b/a MARK'S** | ) | **Judge Amber E. Luttrell** |
| **ROOFING (uninsured),** | ) | |
| **Respondent.** | ) | |

---

## EXPEDITED HEARING ORDER
## DENYING MEDICAL AND TEMPORARY DISABILITY BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on November 16, 2016, upon the Request for Expedited Hearing filed by the Petitioner, Rodrigo Ayala Garcia, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Mr. Garcia requests medical and temporary disability benefits for an alleged June 13, 2016 injury. The present focus of this case is whether an employee-employer relationship existed between Mr. Garcia and the Respondent, Mark Hale, doing business as Mark's Roofing. The central legal issue is whether Mr. Garcia can demonstrate a likelihood of success at a trial on the merits on this issue. If so, this Court must then decide whether he sustained an injury arising out primarily out of and in the course and scope of his employment, entitling him to medical and temporary disability benefits. For the reasons set forth below, the Court holds Mr. Garcia failed to demonstrate he is likely to succeed at a hearing on the merits in proving that he was Mr. Hale's employee. Accordingly, Mr. Garcia's request for medical and temporary disability benefits is denied.

## History of Claim

The following facts were established at the Expedited Hearing. Mr. Garcia is thirty-one years of age and lives in Madison County, Tennessee.[1] He works in construction as a laborer. Specifically, Mr. Garcia testified to performing jobs laying

---

[1] Mr. Garcia testified with the assistance of Ms. Erin Daza Sigler, a registered Spanish court interpreter. (T.R. 6.)

1

bricks, painting, roofing, and carpentry. Mr. Hale operates Mark's Roofing.

On June 13, 2016, while working on a residential roofing job, Mr. Garcia fell approximately fifteen feet from a ladder and injured his right shoulder. His brother, Jorge Ayala Garcia, also worked on this roofing job and immediately took Mr. Garcia to Jackson-Madison County General Hospital, where he was diagnosed with an anterior inferior dislocation of the right humeral head. (Ex. 3.)[2] The attending physician discharged Mr. Garcia with a prescription for pain medication and recommended that he follow-up with Dr. Adam Smith, an orthopedist, within five to seven days. *Id.*[3] Mr. Garcia testified he was unable to work for over a month following the injury. Later, he started working "little by little," although his hand was still injured.[4] Mr. Garcia currently works in Nebraska.

Regarding the issue of the employment relationship, Mr. Garcia alleged he was an employee of Mark's Roofing on his date of injury. He testified his brother, Jorge Ayala Garcia, performed work for Mr. Hale and informed him there was work available. Beginning in 2013, Mr. Garcia performed roofing jobs for Mark's Roofing with Jorge and several others on occasion. According to Mr. Garcia, Mr. Hale would communicate directly with Jorge regarding a roofing job. Jorge provided the truck and trailer, and Mr. Garcia supplied his own tools. Upon completion of a roofing job, Mr. Hale paid Jorge cash. Jorge used the cash to cover trailer expenses, pay material dumping expenses, and pay Mr. Garcia and the rest of the workers. Contrary to Mr. Garcia's previous statement to Ben Edwards, a Bureau Compliance Specialist, that Mr. Hale paid him directly on a daily basis, Mr. Garcia testified repeatedly at the Expedited Hearing that Mr. Hale never paid him directly. (Ex. 4.) He stated Mr. Hale always paid Jorge upon the completion of a job and Jorge always paid the crew and took care of the expenses. Mr. Garcia also testified that between 2013 and 2016, he performed jobs for other contractors as well. Lastly, Mr. Garcia stated he did not consider himself Jorge's employee and did not consider Jorge a subcontractor of Mr. Hale.

Jorge Ayala Garcia testified, by affidavit, that on June 13, 2016, he and his brother were both employed by Mark's Roofing.[5] He stated, "During the course of our work day, my brother, Rodrigo Ayala Garcia, fell 15 feet off a roof, and injured my [sic] shoulder. I immediately took him to Jackson-Madison County General Hospital Emergency Room and notified our boss, Mark Hale."

In contrast to Mr. Garcia's allegation and Jorge's affidavit, Mr. Hale adamantly

---

[2] To avoid confusion, the Court will refer to Petitioner's brother, Jorge Ayala Garcia, as "Jorge" in this Order.

[3] The Court notes the only medical record admitted into evidence at the hearing was the emergency room record from Jackson-Madison County General Hospital. There was no further proof that Mr. Garcia sought any additional medical treatment following the ER visit.

[4] The Court notes Mr. Garcia did not testify regarding any specific injury to his hand from the fall. He only referenced his right shoulder.

[5] Jorge did not appear to testify live at the Expedited Hearing.

disputed that he was Mr. Garcia's employer. Mr. Hale testified that he considered Jorge a subcontractor. Mr. Hale and Mr. Garcia testified consistently that Mr. Hale only paid Jorge upon completion of a roofing job, that Jorge provided his own truck and trailer, and that the workers on Jorge's crew provided their own tools and equipment.

Mr. Hale testified he started Mark's Roofing, a sole-proprietorship, in 2010 to sell roofs. He always hired subcontractors to perform the work. Mr. Hale provided jobs to several different work crews. He provided approximately one or two roofing jobs to Jorge per month. Each job would take approximately one day to complete. He and Jorge agreed to a set price for the roofing job based roughly on the square footage of the house and roof. Mr. Hale testified he had no control over the workers Jorge would bring to help him on a job. He paid Jorge after he finished the job, and Jorge paid the workers on his team. Mr. Hale stated he had no idea how much Jorge paid himself or the workers on his team. Lastly, Mr. Hale testified he sometimes paid Jorge in cash and sometimes paid him with a check. Mr. Hale admitted he did not have workers' compensation insurance in June 2016. He testified he usually "made sure" subcontractors had workers' compensation insurance, but he had not asked Jorge.

Mr. Garcia filed a Petition for Benefit Determination (PBD) seeking medical and temporary disability benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. This hearing followed.

### Findings of Fact and Conclusions of Law

*Standard applied*

The following legal principles govern this case. In general, Mr. Garcia bears the burden of proof on all prima facie elements of his workers' compensation claim. Tenn. Code Ann. § 50-6-239(c)(6) (2015); *see also Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). However, Mr. Garcia need not prove every element of his claim by a preponderance of the evidence at this Expedited Hearing stage in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Rather, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015).

In the present case, this Court must first address whether an employee-employer relationship existed between Mr. Garcia and Mr. Hale. To recover workers' compensation benefits, the claimant must be an employee and not an independent contractor or a casual employee. *Bargery v. Obion Grain Co.*, 785 S.W.2d 118, 121

3

(Tenn. 1990). Determining whether an individual is an employee or an independent contractor for workers' compensation purposes requires a specialized factual analysis. *Masiers v. Arrow Transfer & Storage Co.*, 639 S.W.2d 654, 656-57 (Tenn. 1982) (*citing Barnes v. Nat'l Mortg. Co.*, 581 S.W.2d 957 (Tenn. 1979)). No single aspect of a work relationship is conclusive in making this determination, and in deciding whether a worker is an employee or independent contractor, "the trier of fact must examine all relevant factors and circumstances" of the relationship. *Boruff v. CNA Ins. Co.*, 795 S.W.2d 125, 127 (Tenn. 1990).

The Tennessee Workers' Compensation Act requires that, in a work relationship, in order to determine whether an individual is an "employee," or whether an individual is a "subcontractor" or an "independent contractor," the following factors shall be considered:

(i)     The right to control the conduct of the work;
(ii)    The right of termination;
(iii)   The method of payment;
(iv)    The freedom to select and hire helpers;
(v)     The furnishing of tools and equipment;
(vi)    Self-scheduling of working hours; and
(vii)   The freedom to offer services to other entities.

Tenn. Code Ann. § 50-6-102(11)(D) (2015).

These factors are not absolutes that preclude examination of each work relationship as a whole and are no more than a means of analysis. *Masiers*, 639 S.W.2d at 656 (*citing Jackson Sawmill v. West*, 619 S.W.2d 105 (Tenn. 1981)). While no single factor is determinative, the Tennessee Supreme Court "has repeatedly emphasized the importance of the right to control, the relevant inquiry being whether the right existed, not whether it was exercised." *Galloway v. Memphis Drum Service*, 822 S.W.2d 584, 586 (Tenn. 1991). Once it is established that an employment relationship exists, "the burden is on the employer to prove the worker was an independent contractor rather than an employee." *Id.* Another significant factor is the right of termination. *Masiers*, 639 S.W.2d at 656 (*citing Wooten Transports, Inc. v. Hunter*, 535 S.W.2d 858 (Tenn. 1976)). "As noted in *Masiers* [citation omitted], 'the power of a party to a work contract to terminate the relationship at will is contrary to the full control of work activities usually enjoyed by an independent contractor.'" *Boruff*, 795 S.W.2d at 127.

Applying these principles to the facts of this case, the Court cannot find Mr. Garcia came forward with sufficient evidence from which this Court may conclude he is likely to prevail in establishing he was an employee of Mark Hale.

With regard to the right to control the conduct of the work, Mr. Garcia offered no

4

testimony to prove, or even suggest, that Mr. Hale controlled the conduct of the work. The only testimony before the Court related to this factor came from Mr. Hale, who testified, without contradiction, that he agreed to pay Jorge a specific amount for a roofing job, and Jorge secured workers and performed the job with the workers' own tools, equipment, and transportation. The Court finds the only proof at the hearing on this factor fails to support an employer-employee relationship.

There was likewise no proof offered at the Expedited Hearing that Mr. Hale retained the right of termination over Mr. Garcia. The only proof relating to this factor was Mr. Hale's testimony that he hired Jorge to perform a roofing job and he had no control over whom Jorge secured to help him perform the job. While neither party testified specifically regarding the right to terminate, the Court finds it reasonable to conclude that if Mr. Hale did not control whom Jorge hired to perform a job, he also did not terminate anyone Jorge secured for the work crew. Thus, the "right of termination" factor fails to support an employer-employee relationship.

With regard to the method of payment, the testimony at the Expedited Hearing was undisputed that Mr. Hale never paid Mr. Garcia directly for the work. Mr. Garcia was paid by his brother, Jorge, in cash, upon the completion of a job. Mr. Hale paid Jorge a set amount by the job and not by the hour. Mr. Hale had no control over how much Mr. Garcia was paid for his work. While Mr. Garcia gave a conflicting statement to Ben Edwards, the Bureau's Compliance Specialist, regarding the method of payment, the Court does not find his statements to Mr. Edwards on that issue credible given his adamant testimony at the Expedited Hearing that Mr. Hale never paid him directly for any work. Further, the Court finds credible Mr. Hale's consistent testimony that he never paid Mr. Garcia directly. The Court finds the "method of payment" factor fails to support an employer-employee relationship.

As for the freedom to select and hire helpers, it was undisputed that Mr. Hale did not select or hire helpers for Jorge, including Mr. Garcia. The "freedom to select and hire helpers" factor fails to support an employer-employee relationship.

With respect to the furnishing of tools and equipment, the parties agreed that Mark's Roofing provided no tools or equipment to Mr. Garcia. Mr. Garcia provided his own tools and Jorge provided a truck and trailer. This factor fails to support an employer-employee relationship.

Regarding the scheduling of work hours, Mr. Hale asked Mr. Garcia on cross-examination if Mark's Roofing ever told him when to be at a job. Mr. Garcia responded, "sometimes 7 or 6." There was no other testimony from the parties on this factor. The Court finds Mr. Garcia's response appeared to address what time of day he started work instead of whether Mr. Hale was the one who told him when to start work. The Court finds the proof on this factor insufficient to support an employer-employee relationship.

Finally, with respect to the freedom to offer services to other entities, both parties agreed that Mr. Garcia was free to offer his services to other companies and did so during the time he performed jobs for Mark's Roofing between 2013 and 2016. Thus, the "freedom to offer services to other entities" factor fails to support an employer-employee relationship.

The Court finds every statutory criteria set forth in Tennessee Code Annotated section 50-6-102(10)(D) fail to support an employer-employee relationship. Accordingly, this Court concludes that Mr. Garcia failed to prove that he was an employee of Mark Hale.

Having found Mr. Garcia was not an employee of Mark Hale at the time of his injury, the only other basis upon which Mr. Garcia might prevail on his claim is if he established Mark Hale were liable as a principal contractor under Tennessee Code Annotated section 50-6-113(a) (2015). The statute provides that a principal contractor is liable for compensation to any employee injured while in the employ of any subcontractor to the same extent as the immediate employer. Section 113(c) provides that "every claim for compensation under this section shall be in the first instance presented to and instituted against the immediate employer[.]"

While Mr. Hale characterized Jorge as a subcontractor, Mr. Garcia did not allege Jorge was a subcontractor or his immediate employer. To the contrary, Mr. Garcia adamantly denied he was employed by his brother and only alleged he was employed by Mr. Hale. As Mr. Garcia did not even allege that Jorge was his employer, there is no proof before the Court that he first sought workers' compensation benefits from Jorge under Tennessee Code Annotated 50-6-113(c) and insufficient proof of an employer-employee relationship between Mr. Garcia and Jorge. Accordingly, there is insufficient proof before the Court at this time for the Court to conclude that Mark Hale is liable under Tennessee Code Annotated section 50-6-113.

Therefore, as a matter of law, this Court holds Mr. Garcia failed to come forward with sufficient evidence from which this Court might conclude that he is likely to prevail at a hearing on the merits. Accordingly, his request for medical and temporary disability benefits is denied.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Garcia's claim against Mark Hale doing business as Mark's Roofing for the requested medical benefits and temporary total disability benefits is denied at this time.

2. **This matter is set for a Scheduling Hearing on January 9, 2017, at 10:00 a.m.**

6

**Central Time.**

**ENTERED this the 13th day of December, 2016.**

Judge Amber E. Luttrell
**Court of Workers' Compensation Claims**

Scheduling Hearing:

A Scheduling Hearing has been set with **Judge Amber E. Luttrell, Court of Workers' Compensation Claims. You must call toll-free at 855-543-5039 to participate in the Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board

7

will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:
1. Affidavit of Rodrigo Ayala Garcia
2. Affidavit of Jorge Ayala Garcia
3. Medical records of Jackson-Madison County General Hospital
4. Expedited Request for Investigation Report

Technical record:[6]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Order Denying File Review Expedited Hearing
5. Notice of Expedited Hearing
6. Certification of Registered Spanish Court Interpreter, Erin Daza Sigler

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 13th day of December, 2016.

| Name | Certified Mail | First Class Mail | Via Email | Service sent to: |
|------|----------------|------------------|-----------|------------------|
| James Krenis, Esq., Attorney for Employee | | | X | James.krenislaw@outlook.com  Leslie.krenislaw@outlook.com |
| Mark Hale, Uninsured Employer | X | X | | 38 Old Hickory Cove, B-13S  Jackson, TN 38305 |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**

---

[6] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.